## WITHAM v. WALSH.

1. CANCELLATION OF INSTRUMENTS—FRAUD— EVIDENCE — SUFFICI-
ENCY.

Complainant, under the terms of a will, was bequeathed a sum
of money which she desired defendants to invest for her.
Defendants induced her to sign an agreement by which said
legacy was assigned to them in consideration for which they
were to pay her a certain amount monthly during her life-
time. The agreement recited that complainant did not con-
sider herself competent to care for her money and invest it
properly, and that she had great confidence in the honesty
and ability of defendants, which facts were also established
by other testimony. *Held*, that, as defendants occupied a
fiduciary relation to complainant, it was incumbent upon
them to apprise her of the legal effect of the agreement, and,
it appearing from the testimony that her rights had not been
so protected, she was entitled to a decree setting aside the
agreement on the ground of fraud.

2. SAME.

Complainant, under the terms of the decree, was properly en-
titled to follow the fund to the property in which it was in-
vested, and was also entitled to a personal decree against de-
fendants; since if the property was insufficient to satisfy the
terms of the decree, defendants would be allowed to profit
from their wrongdoing.

Appeal from Clinton; Searl, J. Submitted April 15,
1909. (Docket No. 48.) Decided May 25, 1909.

Bill by Mary Witham against James F. Walsh and
others to set aside certain contracts on the ground of
fraud. From a decree for complainant, defendants ap-
peal. Affirmed.

*William M. Smith*, for complainant.

*A. G. Shepard* (*Lyon & Moinet*, of counsel), for de-
fendants.

MONTGOMERY, J.   This bill was filed to set aside two different contracts made between defendants James F. Walsh and Laura L. Shepard and complainant, and to recover the sum of $2,000 received by said defendants from the complainant under the contracts in question.   The bill alleges:   That the complainant, at the time of entering into the transactions, was upwards of 60 years of age, wholly inexperienced in business affairs, and had no knowledge of business; that she had every confidence in the defendants, James F. Walsh and Laura L. Shepard, then Laura L. Marvin; and that, as she supposed, she had placed in their hands for investment, to manage and care for her, the sum of $2,000, being a legacy received from Amy E. Frisbee, in whose family complainant had lived as a domestic and companion for many years.   The circuit court granted the relief prayed, and from the decree thus entered the defendants appeal.

The facts are that the complainant is a maiden lady, now nearly 70 years of age.   She had for many years lived in the family of Mrs. Frisbee, receiving no wages, but was supplied with her necessities, including medical attendance and clothing.   The defendants, James F. Walsh and Laura L. Shepard, are brother and sister, and were nephew and niece, respectively, of the Frisbees. They were practically brought up by the Frisbees, and received the larger portion of the Frisbee estate through the will of Mrs. Frisbee.   By the same will a legacy of $2,000 was bequeathed to the complainant.   The money was never actually paid into the hands of complainant, but in lieu thereof a receipt was given to the executor, signed by her, acknowledging receipt of the legacy, and the amount of the legacy was applied on the purchase of a lot and store building in the village of Ovid.   The evidence both of the complainant and of the two defendants, makes one thing very clear, and that is that the complainant sought to have the defendants, Walsh and Mrs. Shepard, then Marvin, undertake the investment of the amount of her legacy.   Mrs. Shepard testified that before the

estate was settled the complainant spoke to her about investing the money and also asked her to speak to her brother, Mr. Walsh, about it. Mrs. Shepard testified that she directed complainant to speak to Mr. Walsh herself. Mr. Walsh also testified that complainant spoke to him about investing the money. It is true both of these defendants state that complainant also stated at the same time that she expected that the money would go to them (the defendants) in equal shares after her death. Complainant testified that she had the utmost confidence in the two defendants and did desire that they should invest the money for her.

The result of the negotiations was that through Mr. Shepard, an attorney, who afterwards became the husband of the defendant Laura, an agreement was drawn up between the parties, as follows:

"This agreement made and entered into this 10th day of November, 1900, by and between J. F. Walsh, of Detroit, Mich., and Laura L. Marvin, of Middlebury township, Shiawassee county, Mich., of the first part, and Mary Witham, of Ovid, Mich., of the second part, witnesseth:

"Whereas, said party of the second part was left the sum of two thousand dollars, by the terms of the will of Amy E. Frisbee, deceased; and, whereas, said second party is old and enfeebled and does not consider that she is competent to take care of said money and properly invest the same, and does not want to assume that responsibility; and, whereas, she has great confidence in the honesty and ability of said first parties, and desires them to attend to the proper investment of said money and assume the risks and responsibilities of the same; and, whereas, said second parties, for the considerations hereinafter mentioned, are willing to assume the risks and responsibilities of the proper investment of said money, for the benefit of the said party of the second part: Now, therefore, said parties do hereby contract and agree with each other in reference to said matters, as follows, to wit:

"Said second party hereby agrees to and does assign and set over unto the said first parties her claim against the estate of the said Amy E. Frisbee to the moneys to

which she is entitled under the terms of said will, which said moneys shall be for the sole use and benefit of the said parties of the first part, subject, however, to the following conditions to be performed by said first parties for said second party, viz. :

"Said J. F. Walsh and Laura Walsh, for and in consideration of the premises, does hereby covenant and agree to and with the said parties of the second part, as follows: They are to pay to said Mary Witham, on the last secular day of each month, during the remainder of her natural life, the sum of ten dollars for her support, comfort and maintenance. They are also to pay all doctor bills now contracted by said Mary Witham, and all other of her debts and liabilities now contracted by her, and in case of a prolonged sickness, should the money above contracted for be insufficient to meet her necessary expenses, they are to advance such other sum or sums as may be necessary, and upon the death of said Mary Witham said parties of the second part are to pay all necessary and reasonable expenses of her sickness and funeral, including a suitable headstone.

"Said second parties also agree to surrender any claim or claims which they, or either, have against said Mary Witham for her support and maintenance since June 20, 1899.

"Said J. F. Walsh, to secure to said Mary Witham the faithful performance by them of the above agreements upon the part of the said second parties of the second part, is to execute to said Mary Witham a real estate mortgage upon lot seventeen (17), in block thirteen (13), in the village of Ovid, Clinton county, Mich., for the sum of two thousand dollars, conditioned upon the same being immediately due and payable upon the breach of this contract, or any part thereof, by second parties, or either of them. Said mortgage to be collateral to this contract, and to be null and void upon the faithful performance of this contract by second parties.

"It is further agreed that before said mortgage shall be declared due under the above conditions by said Mary Witham, for the breach of any agreement herein contained to be performed by second parties for first party, that said matter shall be left to the decision of three disinterested persons, to be chosen by the parties hereto, as follows: First parties are to choose one, and second party one, and the two so chosen to choose a third, and

the decision of said parties shall be a condition precedent to any steps being taken by second party to foreclose said mortgage.

"It is further agreed that if said Mary Witham does not ask for the appointment of said arbitrators, by a written notice to be served upon said first parties, it shall be deemed conclusive evidence that first parties have in every respect fulfilled the terms of this contract."

Subsequently another agreement was drawn discharging the mortgage referred to in the above agreement, containing an agreement on the part of the defendants that they would not sell or dispose of the lot and store building which had been covered by the mortgage until the complete satisfaction of the contract with complainant. It is the claim of the defendants that this did not materially change the relations of the parties. The important question is whether the first contract was freely and understandingly made, and this presents a question of fact.

We are satisfied, upon an examination of the record, that, whatever may have been the motives of the parties, the agreement did not embody the understanding of the complainant, and that the relations between the parties were such that there rested a duty upon the part of these defendants and their attorney to make clear to the complainant the provisions of the contract. We need not go beyond the limits of the contract itself for evidence that the defendants understood that the complainant did not consider herself competent to care for her money and invest it properly, nor for evidence that she had great confidence in the honesty and ability of the first parties. The preamble asserts this, and further asserts that she desired the defendants to attend to the proper investment of the money, and also recites a willingness on the part of the defendants to assume the risks and responsibilities of the proper investment of said money for the benefit of the party of the second part. Here is a declared purpose of the instrument. It is true that, technically read, the instrument might be understood by a lawyer to have passed the title to these moneys to the defendants. The

complainant assigns and sets over her claim against the estate which she is entitled to under the terms of the will, and adds: "Said moneys to be for the sole use and benefit of said parties of the first part, subject, however, to the following conditions." There is a seeming inconsistency between this assignment in its terms and the declaration contained in the preamble to the contract. In view of the relation of confidence and trust which existed between the complainant and defendants, which is shown not only by the testimony in the case but by the very instrument in question, we think it was incumbent upon the defendants to have apprised the complainant fully of the legal effect of this instrument, and upon no one connected with this transaction did this duty rest more than upon the attorney, Mr. A. G. Shepard.

Further than this, the contract purports to bind the defendants to pay the doctor bills "now contracted by said Mary Witham." There were no such doctor bills. Not only had the custom of Mrs. Frisbee been to pay complainant's expenses, including doctors' bills and for clothing, in consideration of the services rendered her during these many years, but at this very time the doctors' bills which had been incurred by complainant had been proved against the estate and actually paid by the estate. There is reference also to other debts and liabilities of which there were two items amounting to something less than $80. We think the circuit judge was not in error in holding that there was overreaching on the part of the defendants, that complainant had not an understanding of the effect of this instrument, and that equity requires that she should be reinstated in her estate.

The circuit judge allowed defendants the amount of the obligations owing by her and assumed by defendants to the amount of $80, and charged that against the interest moneys which would accrue at 6 per cent. upon the principal of the contract up to the date of the decree. We think in this the rights of the defendants were fully protected.

Some legal questions are raised. Among others, it is contended that a personal decree should not have passed against the defendants. The court held that, as the money which complainant had, and which was obtained from complainant, was invested in the lot and store above referred to, a lien should be declared upon that property. In other words, that the complainant was entitled to follow the fund, and also decreed that, in case of a failure to satisfy the amount of the decree out of the property, the parties to the transaction should reimburse the complainant. We see no want of power to grant this relief. Anything short of this would be permitting the defendants to reap the benefits of this transaction and of a wrong perpetrated upon complainant.

The decree will be affirmed, with costs.

BLAIR, C. J., and GRANT, MCALVAY, and BROOKE, JJ., concurred.