WITTE *v.* HOBOLTH.

1. CANCELLATION OF INSTRUMENTS — FRAUD — BURDEN OF PROOF — EVIDENCE—SUFFICIENCY.

In a suit for the cancellation of a contract for the sale of a combined hotel and restaurant business on the ground of fraud, evidence on the part of plaintiff, *held,* sufficient to meet the burden of proof, justifying a decree in his favor.

2. SAME—LACHES.

Where plaintiff learned of the .fraud about three weeks after the purchase and his bill for cancellation was filed two months later, in the meantime attempts at re-sale being made at defendant's suggestion, and it does not appear that defendant was injured by the lapse of time, *held,* that plaintiff acted with reasonable promptness.

3. SAME — RESCISSION — TENDER OF PROPERTY RECEIVED UNNECESSARY.

Since a suit in equity to rescind a contract on the ground of fraud proceeds on the theory that there has been no rescission, tender or offer to restore the property received, before commencing suit, is unnecessary.

4. SAME—EQUITY COURT HAS POWER TO AWARD LIEN FOR PAYMENTS MADE.

On the cancellation of a contract for the sale of a combined hotel and restaurant business on the ground of vendor's fraud, a court of equity has power to award the vendee a lien on the property sold for the payments made; overruling the holdings to the contrary in the cases of *Von Hoene* v. *Barber*, 215 Mich. 538, and *Mulheron* v. *Henry S. Koppin Co.*, 221 Mich. 187. WIEST, C. J., and FELLOWS and MOORE, JJ., dissenting.

Appeal from Lapeer; Williams (William B.), J. Submitted April 12, 1923. (Docket No. 68.) Decided October 1, 1923.

On right of vendee under executory contract to a lien on the land for the amount paid where the contract fails or is rescinded, see note in 20 L. R. A. (N. S.) 175.

Bill by Otto Witte against Harry Hobolth for the rescission of a contract for the sale of certain property on the ground of fraud.    From a decree for plaintiff, defendant appeals.    Affirmed.

*B. F. Reed* and *G. W. Des Jardins,* for plaintiff.

*Elmer Shumar,* for defendant.

CLARK, J.    Defendant conducted a combined hotel and restaurant in Imlay City.    He owned part of the personal property.    He held the real estate and part of the personal property under a lease from J. C. Shaw and Lydia Shaw.    Intending to sell, he employed a broker in Detroit who advertised the business for sale.    Plaintiff, in Detroit, a brewer by trade, saw the advertisement.    He, his wife, and an employee of the broker went to Imlay City, met defendant and saw the property.    Plaintiff claims to have stated that he was without experience in that business. He says that representations were made to him by defendant by which he was induced to purchase, which he did the following day for $5,500, $2,600 in cash and the remainder by a series of notes secured by a chattel mortgage on the property purchased.    Defendant gave plaintiff a bill of sale of many articles including chairs, tables, stoves, utensils, cutlery, soda fountain, cash register, etc., and "all linen, sheets, pillows, bed spreads, bedding, towels, etc.," and "all stock on hand consisting of cigars, tobacco, confectionery, groceries, vegetables, drinks, etc., together with all fixtures, good will and assignment of lease of Wayfarer's Inn, Imlay City, Michigan."    Defendant also leased to plaintiff the real estate for a term beginning in June, 1921, and ending September 1, 1925, the lease also reciting:

"It is understood that the furniture and fixtures now in said building and owned by J. C. Shaw and Lydia T. Shaw shall be included in this lease."

The monthly rental was $50.    Soon after plaintiff took possession he complained to defendant that he had been defrauded.    It is said that defendant put him off with suggestion and advice that the business be re-sold.    Some time before the sale to plaintiff defendant made some arrangement to sell to one Layle who was put in possession, but this proved a failure and defendant took back the property and another sale was decided upon, in the proceeds of which it appears Layle was to have an interest.    It appears that in addition to the $2,600 which plaintiff paid down he had about $500.    This with $100 he borrowed has gone into the business.    Finally, 84 days after purchasing, plaintiff filed this bill praying that defendant be restrained from selling or assigning the notes and mortgage and from foreclosing the mortgage, and that:

"Defendant be decreed to restore to plaintiff the two thousand six hundred dollars purchase money paid to him by plaintiff, and until said sum is paid by defendant that plaintiff have a lien on the personal property for that amount."

There is a prayer for general relief, and though not in apt words, rescission is prayed together with cancellation of the writings and obligations.    The testimony of plaintiff and his witnesses tends to show that the value of the lease and the condition of the building were misrepresented; that the heating plant and the plumbing were bad; that the income and volume of the business were grossly misrepresented; that the quantity of personal property in the place belonging to defendant, as distinguished from that belonging to the Shaws, was also misrepresented, as well as the value of the property sold.    Plaintiff also had testimony of statements and admissions by defendant to the effect that in the sale plaintiff had been unfairly dealt with.    The evidence in behalf of defendant is in con-

flict, in the main, with the evidence in plaintiff's behalf. The trial judge found for plaintiff and decreed rescission and the cancellation of the notes, the mortgage and the lease, an injunction against the transfer of the notes and mortgage and against the foreclosure of the mortgage, the payment by defendant to plaintiff of the sum of $2,600 and interest, with costs, and that plaintiff have a lien on all the said personal property in question to secure the payment of the amount. Defendant has appealed.

1. It is insisted that rescission and cancellation, the contract being executed, ought not to be decreed unless the fraud be made clearly to appear and unless the falsity of the claimed representations be certainly proved, citing *Oliver* v. *Baldwin*, 201 Mich. 336, and that plaintiff has not met such burden. A more detailed statement of the particulars of the property and of the business and of the claimed fraud and misrepresentation in regard thereto will profit no one. A careful reading of the record satisfies us that the plaintiff has met such burden and that the trial judge was right in his finding.

2. It is urged that plaintiff should have acted more promptly in seeking rescission and cancellation. He says he learned of the fraud in about three weeks after the purchase. His bill was filed about two months later. But in the meantime there had been attempted, at defendant's suggestion, a re-sale of the property, plaintiff being willing to accept considerable loss if the matter could be so adjusted. But such sale was not made. It does not appear that defendant was injured by the lapse of such time. The effect of his suggestion of re-sale was delay. We think plaintiff acted with reasonable promptness. We said in *Barron* v. *Myers*, 146 Mich. 510: "The law of laches should be used as a shield and not a sword." See *John Schweyer & Co.* v. *Mellon*, 196 Mich. 590.

3. It is said that plaintiff neither restored nor offered to restore to defendant the property received before seeking rescission.   Neither was necessary.   A bill in equity praying rescission proceeds on the theory that there has been no rescission, not on the theory that rescission has already been accomplished.   Were plaintiff to sue at law for the money he paid defendant he should, before suit, restore, or tender restoration of, the property he received that by his own act he thus may have legal right and title to the money.   See 9 C. J. p. 1215; *Jandorf* v. *Patterson*, 90 Mich. 40.

4. The decree for rescission and cancellation gives plaintiff a lien on the said personal property to secure payment of the amount found to be due.   Counsel for defendant says that this is contrary to the holding in *Mulheron* v. *Henry S. Koppin Co.*, 221 Mich. 187, where we held, quoting from syllabus:

"Where a contract for the purchase of a cottage was rescinded by the vendees and canceled by a court of equity on the ground of vendor's fraud, the court was not authorized to award the vendees a lien on the premises for the payments made, since their right to a lien must be based on the contract, and when that was rescinded the parties were remitted to their original rights."

In so holding we followed *Von Hoene* v. *Barber*, 215 Mich. 538, where, without discussing the question, we followed the majority opinion in *Davis* v. *Rosenzweig Realty Co.*, 192 N. Y. 128 (84 N. E. 943, 20 L. R. A. [N. S.] 175, 127 Am. St. Rep. 890).   Justice FELLOWS, in writing the *Mulheron Case*, distinctly points out that the *Davis Case* has been severely criticized and shows that it is against the great weight of authority, but we were constrained to follow precedent of the *Von Hoene Case*.   In this we were wrong.   Such holding in both the *Von Hoene* and *Mulheron Cases* should be overruled.   That such holding is bad in principle and against the overwhelming weight of

authority appears by the following: In 39 Cyc. p. 2031, 2032, it is said in the text:

"If the contract fails, or is avoided, because of the inability or refusal of the vendor to make a marketable title, or title free from incumbrances, or because of fraud or misrepresentation in the contract, or for any other reason which is chargeable to the vendor and which is not due to default on the part of the purchaser, the latter is given a lien upon the land as security for the repayment of what he has paid in performance of the contract. So, too, the lien may attach where the contract has been mutually rescinded, or rescinded by the vendor, or by the purchaser under his right to do so."

In support of the text many authorities are cited, but as *contra* the *Davis Case,* of the dissenting opinion in which it is said in a note:

"In this case, however, Gray, J., in a well considered and elaborate dissenting opinion, in which Chase and Hiscock, JJ., concurred, remarked:

"'I think that it follows, fairly, from what is held as to the general doctrine that whether the transaction of purchase fall through by reason of the inability of the vendor to convey as agreed, or whether, as in this case, the contract be rescinded before completion by reason of the vendor's misrepresentation of a material fact, in either event, the vendee's right to a lien cannot be affected. That view has been taken by the English courts, as will appear from the opinions in *Whitbread & Co., Ltd.,* v. *Watt* (1902), 1 L. R. Ch. Div. 835, 71 L. J. Ch. 424, 86 L. T. Rep. N. S. 395, 18 T. L. R. 465, 50 Wkly. Rep. 442; *Rose* v. *Watson,* 10 H. L. Cas. 672, 10 Jur. N. S. 297, 33 L. J. Ch. 385, 10 L. T. Rep. N. S. 106, 3 New Rep. 673, 12 Wkly. Rep. 585, 11 Eng. Reprint 1187, and *Mycock* v. *Beatson,* L. R. 13 Ch. Div. 384, 49 L. J. Ch. 127, 42 L. T. Rep. N. S. 141, 28 Wkly. Rep. 319, and it seems to me, always granting the right in equity to decree a lien, that it is a proper view. * * * It is sought, by the argument, to make a distinction between an election to treat the contract as broken and an election to avoid it. This argument is based upon the premise that the vendee's lien is a deduction from the contract and cannot stand without it. It is true that the contract establishes the relations of the parties and is the evidence

of their agreements; but its rescission for the fraud of, or for a breach by, the vendor should not affect the right of the vendee to his equitable lien upon the land. Why should it, if its creation by equity is to secure to the vendee repayment of his advances? The contract, in such case, is not void, but voidable, at the option of the purchaser. If the option is exercised, how is the right to invoke the equitable power of the court to decree a lien lost? I think that the argument disregards the principle, upon which, as I conceive it, equity creates the lien. The lien is decreed independently of the contract, which does not give it, but furnishes the reason for the decree.'"

In a note in 20 L. R. A. (N. S.) 176, it is said of the *Davis Case:*

"The decision itself is opposed to the great weight of authority wherein the doctrine of a lien in favor of either vendor or vendee is recognized, and it also seems to be opposed to the majority of the cases that have considered the nature of a vendee's lien."

In the text of 27 R. C. L. p. 629, after stating the rule of the *Davis Case,* the author says:

"In other cases, however, the right of the purchaser to a lien has been upheld where the purchaser's right to recover payments made was based on a rescission for the fraud of the vendor, such cases being considered without argument as governed by the same principle as where the recovery is for the failure or refusal of the vendor to convey."

In 9 C. J. p. 1265, the author, after referring to the *Davis Case* as "some authority to the contrary," says:

"The better rule is that, where rescission is decreed at the suit of the purchaser, the court may declare a lien on the land or other property sold for the repayment of the purchase money."

The *Von Hoene Case* introduced a new principle in the law of this State. In *Jones* v. *Wing and Dean,* Har. Ch. 301, the court decreed a vendee's lien that the contract be rescinded and

"That the unsold portion of the goods be re-delivered to complainant, and that he be paid for those sold, and

have a lien on the land as security until the payment was made."

See, also, *Witham* v. *Walsh,* 156 Mich. 582, and *Culver* v. *Avery,* 161 Mich. 322. The power to decree a lien to the purchaser does not spring from the contract. It is found in the broad powers of a court of equity. The contract does not give the power. Its rescission does not take it away. That this is a salutary power is indicated by this record. Plaintiff has invested all the money he had. He has been defrauded. The sworn bill of complaint alleges that defendant is not collectible and that an execution against him could not be satisfied.

The decree is affirmed, with costs to plaintiff.

MCDONALD, BIRD, SHARPE, and STEERE, JJ., concurred with CLARK, J.

WIEST, C. J. (*for modification and affirmance*). I do not concur in overruling our holdings in the recent cases of *Von Hoene* v. *Barber,* 215 Mich. 538, and *Mulheron* v. *Henry S. Koppin Co.,* 221 Mich. 187, in which we followed the New York rule of not allowing a lien to a vendee granted rescission for fraud. A vendee's lien is granted in New York on failure of the vendor to convey because of defective title, for this bears some relation to the contract. *Elterman* v. *Hyman,* 192 N. Y. 113 (84 N. E. 937, 15 Ann. Cas. 819, 127 Am. St. Rep. 862). But no lien is given where the contract is rescinded for fraud at the suit of the vendee. *Davis* v. *Rosenzweig Realty Co.,* 192 N. Y. 128 (84 N. E. 943, 20 L. R. A. [N. S.] 175, 127 Am. St. Rep. 890); *Goodman* v. *Schwab,* 136 App. Div. 583 (121 N. Y. Supp. 69).

I am for affirmance without, however, the granting of a lien.

FELLOWS and MOORE, JJ., concurred with WIEST, C. J.