*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

UNIVERSITY OF MICHIGAN REGENTS,

      Plaintiff-Appellee,

v

MICHIGAN AUTOMOBILE INSURANCE
PLACEMENT FACILITY,

      Defendant-Appellant,

and

UNNAMED ASSIGNEE OF THE MAIPF,

      Defendant,

and

FALLS LAKE NATIONAL INSURANCE
COMPANY,

      Defendant-Appellee.

FOR PUBLICATION
January 20, 2022
9:05 a.m.

No. 354808
Washtenaw Circuit Court
LC No. 19-001118-NF

Before: SAWYER, P.J., and SERVITTO and RICK, JJ.

PER CURIAM.

Michigan Automobile Insurance Placement Facility (MAIPF) appeals by leave granted, *University of Michigan Regents v Michigan Auto Ins. Placement Fac.*, unpublished order of the Court of Appeals, issued January 27, 2021 (Docket No. 354808), the trial court orders denying its motion for summary disposition and granting defendant, Falls Lake National Insurance Company's (Falls Lake), motion for summary disposition. We vacate the orders and remand this matter in order for the circuit court to balance the equities between Falls Lake, as a defrauded insurer, and Trevino, as an innocent third party.

-1-

On November 1, 2018, Sterling Pierson applied for a policy of automobile insurance from Falls Lake to cover his 2003 Chevy Malibu. The application required Pierson to identify, among other things, all household members who were 14 years of age or older and other vehicles he owned. Falls Lake completed the application review and issued a policy of insurance to Pierson effective November 1, 2018.

On November 10, 2018, Pierson and his live-in girlfriend, Alisha LaPorte, drove Valentino Trevino to a Saginaw area bar in Pierson's Malibu. According to both Pierson and LaPorte, after Trevino got out of the vehicle, he opened the driver's side door and attacked Pierson. Pierson reported fearing for his life. As a consequence of this fear, Pierson drove away with Trevino clinging to the driver's side door and being dragged down the street. Pierson repeatedly swerved his vehicle in an attempt to break Trevino's grip on the door. As he did so, the Malibu crossed the center line and struck a parked vehicle. Trevino sustained serious bodily injuries during these events and was treated for those injuries at a medical facility owned and operated by plaintiff.

Subsequently, Trevino filed a claim for no-fault benefits with Falls Lake. On June 11, 2019, Falls Lake notified Pierson that his no-fault policy was rescinded because Pierson made two material misrepresentations in his insurance application, namely (1) failing to disclose two residents of Pierson's household over the age of 14 and (2) failing to disclose a second vehicle owned by Pierson. Falls Lake also mailed to Pierson a check in an amount sufficient to refund the paid premium on the policy. Pierson endorsed and cashed the refund check.

On September 23, 2019, plaintiff, the assignee of Trevino, applied for no-fault benefits through the assigned claims plan. Plaintiff's application identified Pierson's Falls Lake policy as providing insurance applicable to Trevino's injuries, and advised that Falls Lake was contemplating the rescission of that insurance policy. The MAIPF denied Trevino's claim because insurance applicable to his injuries through Falls Lake was identified.

On October 16, 2019, plaintiff, as the assignee of Trevino, commenced the underlying action against Falls Lake and the MAIPF. Plaintiff sought to recover the "reasonable and customary charges associated with the treatment" provided to Trevino by plaintiff as a result of his injuries suffered on November 10, 2018. Falls Lake and the MAIPF filed competing motions for summary disposition, each asserting that the other was responsible for paying the medical billings generated by plaintiff as a result of its treatment of Trevino's accidental injuries.

According to Falls Lake, it was entitled to summary disposition under MCR 2.116(C)(10) because it had rescinded its policy of insurance issued to Pierson as a consequence of his misrepresentations, and Pierson had ratified that rescission by accepting the refunded premium. Falls Lake asserted that the rescission rendered the policy void *ab initio*. Thus, Falls Lake provided no coverage for Trevino's injuries. The MAIPF argued that *Bazzi v Sentinel Ins Co*, 502 Mich 390; 919 NW2d 20 (2018), required that the equities be balanced before the policy between Falls Lake, as a defrauded insurer, and Trevino, as an innocent third party, could be rescinded with respect to the innocent third-party's claims. It further asserted that the equities weighed in favor of Falls Lake retaining liability under the insurance contract as to Trevino and because the insurance coverage supplied by Falls Lake applied to Trevino under this balancing, both Trevino and plaintiff were ineligible for benefits through the assigned claims plan.

The trial court denied the MAIPF's motion, but granted Falls Lake's motion. The trial court opined that Falls Lake rescinded the policy and Pierson ratified the rescission such that there was no policy in effect. It opined that it thus did not need to balance the equities with respect to innocent third parties and that Falls Lake was not obligated to pay Trevino's medical bills, but that the MAIPF was so obligated. After the trial court denied the MAIPF's motion for reconsideration, this appeal followed.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(10) tests the factual sufficiency of a claim. *Id*. at 160. When considering a motion under MCR 2.116(C)(10), the trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. *Id*. "A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact." *Id*. (citation omitted). "A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ." *Id*. (citation and quotation marks omitted).

At issue in the instant matter is whether, pursuant to our Supreme Court's opinion in *Bazzi*, 502 Mich at 408-412, trial courts are required to balance the equities between a defrauded insurer and an innocent third party before extending the mutual rescission of a no-fault insurance policy to an innocent third party. We find that they are so required.

In *Bazzi*, our Supreme Court recognized that the judicially created innocent-third-party rule, which precluded an insurer from rescinding an insurance policy procured through fraud when such rescission would impact an innocent third party, was abrogated by our Supreme Court's decision in *Titan Ins Co v Hyten*, 491 Mich 547; 817 NW2d 562 (2012). *Bazzi*, 502 Mich at 396. "[A]n insurance policy procured by fraud may be declared void *ab initio* at the option of the insurer." *Id*. at 408 (citations omitted). The Court also recognized that "[r]escission abrogates a contract and restores the parties to the relative positions that they would have occupied if the contract had never been made." *Id*. at 409 (citation omitted). However, "[b]ecause a claim to rescind a transaction is equitable in nature, it is not strictly a matter of right but is granted only in the sound discretion of the court." *Id*. (quotation marks and citations omitted). Thus, while the innocent-third-party rule no longer bars insurers from seeking rescission for fraud, insurers are not categorically entitled to rescission. *Pioneer State Mut Ins Co v Wright*, 331 Mich App 396, 407, 409-410; 952 NW2d 586 (2020), citing *Bazzi*, 502 Mich at 407-408. Accordingly, "[w]hen a plaintiff is seeking rescission, the trial court must balance the equities to determine whether the plaintiff is entitled to the relief he or she seeks." *Bazzi*, 502 Mich at 410 (quotation marks and citation omitted). Our Supreme Court explained:

> [W]hen two equally innocent parties are affected, the court is required, in the exercise of its equitable powers, to determine which blameless party should assume the loss . . . . [W]here one of two innocent parties must suffer by the wrongful act . . . of another, that one must suffer the loss through whose act or neglect such third party was enabled to commit the wrong. The doctrine is an equitable one, and extends no further than is necessary to protect the innocent party in whose favor it is invoked.

In this instance, rescission does not function by automatic operation of the law. Just as the intervening interest of an innocent third party does not altogether bar rescission as an equitable remedy, neither does fraud in the application for insurance imbue an insurer with an absolute right to rescission of the policy with respect to third parties. [*Id.* at 410-411 (quotation marks and citations omitted).]

Our Supreme Court "did not provide trial courts with a clear-cut framework for balancing the equities[.]" *Pioneer State Mut Ins Co*, 331 Mich App at 410. As such, this Court adopted the "nonexclusive list of factors" offered as guidance by Justice MARKMAN in his concurrence in *Farm Bureau Gen Ins Co of Mich v Ace American Ins Co*, 503 Mich 903, 906-907; 919 NW2d 394 (2018) (MARKMAN, C.J., concurring). These factors are:

(1) the extent to which the insurer could have uncovered the subject matter of the fraud before the innocent third party was injured; (2) the relationship between the fraudulent insured and the innocent third party to determine if the third party had some knowledge of the fraud; (3) the nature of the innocent third party's conduct, whether reckless or negligent, in the injury-causing event; (4) the availability of an alternate avenue for recovery if the insurance policy is not enforced; and (5) a determination of whether policy enforcement only serves to relieve the fraudulent insured of what would otherwise be the fraudulent insured's personal liability to the innocent third party. [*Pioneer State Mut Ins Co*, 331 Mich App at 411 (citation omitted).]

In the present matter, the parties do not dispute that Pierson made two material misrepresentations in his application for no-fault insurance. There is also no dispute that Falls Lake and Trevino are blameless parties to Pierson's material omissions on the insurance application, or that Falls Lake rescinded Pierson's policy of insurance, and Pierson ratified the rescission. Falls Lake attempts to distinguish the present matter from *Bazzi* and *Pioneer State*, by pointing out that in those cases the insurers sought rescission of no-fault insurance contract by grant of the trial court. In the present case, in contrast, the rescission was accomplished by mutuality of action, i.e., by return and acceptance of the premium. Falls Lake characterizes rescission accomplished in such a manner as a legal remedy distinct from the equitable rescission done in *Bazzi* and *Pioneer State*. According to Falls Lake, these distinctions are dispositive in nature and remove this matter from the reach of *Bazzi* and its progeny.

In *Meemic Ins Co v Fortson*, 506 Mich 287, 310 n 19; 954 NW2d 115 (2020), our Supreme Court addressed the distinction between the equitable remedy of rescission and the legal remedy of rescission as follows:

Before they were merged, proceedings in equity and law were distinct, with different rules and procedures in each. See Mich Const 1963, art 6, § 5. Although the distinctions have been erased for most purposes, *id.*, the differences sometimes crop up in discussions of the common law. Such is the case here. Although equitable rescission was at issue in *Bazzi* and there was, accordingly, no need to differentiate common-law practices in equity and law, it is worth noting here that courts at law have also permitted rescission as a legal remedy. This form of relief was hedged with formalities, most notably that the plaintiff had to "tender to the

-4-

other party, as a precondition of suit, specific restitution of everything received under the contract." 2 Restatement Restitution, 3d, § 54, comment b, p 268; see also *Chaffee v Raymond*, 241 Mich 392, 394-395; 217 NW 22 (1928) ("In an action at law, based on rescission, a tender is a prerequisite . . . . In equity, however, the rule is not so rigid, for there the bill must make profert of return of what has been received, and the decree will place the parties in status quo, as far as possible."); *Witte v Hobolth*, 224 Mich 286, 290; 195 NW 82 (1923) ("A bill in equity praying rescission proceeds on the theory that there has been no rescission, not on the theory that rescission has already been accomplished. Were plaintiff to sue at law for the money he paid defendant, he should, before suit, restore, or tender restoration of, the property he received, that by his own act he thus may have legal right and title to the money."). According to the Restatement, the formalities gave courts at law considerable discretion, almost akin to that wielded by equity courts. Restatement Restitution & Unjust Enrichment, § 54, comment b, p 268.

Notwithstanding the distinctions between the equitable remedy of rescission and the legal remedy of rescission, this Court has held on multiple occasions that trial courts are required to balance the equities between a defrauded insurer and an innocent third party before extending the mutual rescission of a no-fault insurance policy to an innocent third party. *Estate of Audisho v Everest Nat'l Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued June 24, 2021 (Docket No. 352391), p 3; *Alshabi v Doe*, unpublished per curiam opinion of the Court of Appeals, issued January 23, 2020 (Docket No. 346700), p 3.[1] While in another case, *Green v Meemic Ins Co*, unpublished per curiam opinion of the Court of Appeals, issued August 20, 2020 (Docket No. 348651), this Court reached the opposite conclusion, the *Green* panel makes no reference to our Supreme Court's opinion in *Bazzi*, 502 Mich at 408-412, and does not address the injured party's status as an innocent third party. In light of these omissions and this Court's opinions in *Alshabi* and *Estate of Audisho*, we hold that trial courts are required to balance the equities between a defrauded insurer and an innocent third party before extending the mutual rescission of a no-fault insurance policy to an innocent third party. This conclusion is consistent with our Supreme Court's recognition that courts of law have "considerable discretion, almost akin to that wielded by equity courts[,]" when granting rescission. *Meemic Ins Co*, 506 Mich at 310 n 19. Furthermore, application of the *Bazzi* rule to matters involving rescission at law is a logical outgrowth of *Bazzi*.

Our Supreme Court has recognized both that "[r]escission, whether legal or equitable, is governed by equitable principles," *Kundel v Portz*, 301 Mich 195, 210; 3 NW2d 61 (1942), and that courts at law have considerable discretion in granting rescission, *Fortson*, 506 Mich at 310 n 19. Thus, like equitable rescission, rescission as a legal remedy is also not a matter of right, but rather is granted in the sound exercise of a trial judge's discretion. Because the legal underpinnings

---

[1] "Although MCR 7.215(C)(1) provides that unpublished opinions are not binding under the rule of stare decisis, a court may nonetheless consider such opinions for their instructive or persuasive value." *Cox v Hartman*, 322 Mich App 292, 307; 911 NW2d 219 (2017), lv den 503 Mich 911 (2018) (citation omitted).

of equitable rescission and rescission at law are the same, logic dictates that the same rule apply in matters involving rescission at law.

In sum, trial courts are required to balance the equities between a defrauded insurer and an innocent third party before extending the mutual rescission of a no-fault insurance policy to an innocent third party. Thus, the circuit court erred when it held that Falls Lake had rescinded Pierson's policy of insurance without balancing the equities between Falls Lake, as a defrauded insurer, and Trevino, as an innocent third party. As such, remand is necessary in order for the circuit court to balance the equities between Falls Lake, as a defrauded insurer, and Trevino, as an innocent third party. See *Bazzi*, 502 Mich at 412 (holding that remand was required in order for the trial court to determine whether, in its discretion, rescission of the insurance policy was available). We therefore vacate the trial court's summary disposition orders and remand this matter in order for the circuit court to balance the equities between Falls Lake, as a defrauded insurer, and Trevino, as an innocent third party.

Vacated and remanded for proceedings not inconsistent with this opinion. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Deborah A. Servitto
/s/ Michelle M. Rick