CHARLES JANDORF v. EDWARD H. PATTERSON AND
AUSTIN T. STONE.

*Sale—Fraud—Rescission—Settlement.*

1. A land-owner employed a real-estate broker to negotiate a sale of land at an agreed price, and at the broker's request executed a deed to the broker and a third party, whom he had induced to join in the purchase, naming as the consideration a sum in excess of said agreed price, and, to aid the broker in deceiving the third party as to the real consideration paid, received in his presence the broker's check for such excess, which he returned to him in the absence of his co-grantee, who supposed the whole transaction to be genuine; which conduct is held to have been inconsistent with an innocent purpose, and with good faith towards such co-grantee.

2. After platting the land, and before he learned of the fraud practiced on him, the co-grantee joined in the sale of two lots on contract, and, on being informed of the fraud, arranged with the purchaser for the return of the money he had paid, and for the cancellation of the contract, which was produced, canceled, on the hearing of a suit brought by the co-grantee against the land-owner and broker to set aside the original sale and deed, and recover the money paid by him thereon. And it is held that, as complainant had not dealt with the land as his own after knowledge of the fraud, the land-owner cannot complain if the decree restores to him the land he conveyed.

3. On discovering the fraud the co-grantee insisted upon the return to him by the broker of the money he had paid on the land, and, the broker not being able to make such payment, demanded security, which the broker agreed to but did not give; which action is held not to amount to a settlement so as to bar a suit against the land-owner and broker to set aside the sale and recover the money.

4. No reconveyance of the land was necessary before bringing said suit.

Appeal from Kent. (Adsit, J.) Argued January 12, 1892. Decided January 22, 1892.

Bill to set aside a deed and mortgage on the ground of

fraud, and to compel the defendants to refund the money paid by complainant. Defendant Stone appeals. Decree affirmed. The facts are stated in the opinion.

*L. E. Carroll (H. J. Felker,* of counsel), for complainant, contended:

1. Stone is chargeable with all of the facts known to Patterson while acting as his agent; citing *Macomb v. Wilkinson,* 83 Mich. 487.

2. The defrauded person does not lose his right to rescind by making efforts to compromise or to obtain a settlement, unless he does some act evincing a clear intention to waive such right; citing *Manufacturing Co. v. Platt,* 83 Mich. 419.

3. The whole transaction was fraudulent, and the law declares an illegal act, prejudicial to the rights of others, a fraud upon such rights, although the party denies an intention of committing a fraud; citing *Kirby v. Ingersoll,* Har. Ch. 172; *Beebe v. Knapp,* 23 Mich. 53; *Steinbach v. Hill,* 25 Id. 78; *Stone v. Covell,* 29 Id. 359; *Putnam v. Reynolds,* 44 Id. 115; *Sweet v. Converse,* 88 Id. 1.

*Earle & Hyde,* for appellant, contended:

1. Stating the consideration in the deed at a greater sum than it actually was was not a fraud; citing *Hemmer v. Cooper,* 8 Allen, 334; *Manning v. Albee,* 11 Id. 522; *Cooper v. Lovering,* 106 Mass. 79; *Holbrook v. Connor,* 60 Me. 578.

2. Sale of a portion of the land after discovery of the fraud prevents rescission; citing *Carroll v. Rice,* Walk. Ch. 373; *Disbrow v. Jones,* Har. Ch. 102; *Street v. Dow,* Id. 427; *Wetmore v. McDougall,* 32 Mich. 278; *Merrill v. Wilson,* 66 Id. 243.

3. Complainant never offered to reconvey to Stone, and at the time he filed his bill he had, by selling two lots, put it beyond his power to do so, and, aside from failing to make such offer, he told Stone that the fraud was known, and it was all right, and refused to reconvey and accept a new deed; hence the decree should be reversed; citing *Wilbur v. Flood,* 16 Mich. 45.

McGRATH, J. Defendant Patterson is a real-estate broker, and defendant Stone was the owner of certain real estate. Complainant, who is about 23 years of age, is a baker by trade, and had saved up $500. Patterson induced Jandorf to join with him in the purchase of the

Stone property at $7,000, representing that it was a bargain at that figure. Jandorf at first declined, saying that he had but $500, but Patterson agreed that he would pay $1,100 of the purchase price, which, in addition to the $500, would make $1,600; that the balance would be secured by mortgage, Jandorf giving to Patterson his individual note for $100 and a $400 note to Stone. Complainant knew little about real-estate values, and nothing about the value of lands in the vicinity, but, relying wholly upon the statements made to him by Patterson, agreed to join in the purchase. Stone had agreed to sell at $6,000, and to pay Patterson $150 for selling at that price. All the negotiations were had between Patterson and Stone. Jandorf did not see Stone until the day upon which the transaction was consummated.

It appears that on the 2d day of October, 1890, defendant Patterson came to the bakery establishment where complainant was working, and told him that they were ready to close the sale and purchase of the land, and took him to the office of Boltwood & Boltwood, where complainant found defendant Stone and his wife, and where the papers had already been drawn; that defendant Patterson passed over a $1,100 check to defendant Stone, which defendant Stone put in his pocket, and took the money from the complainant, namely, the $500, and counted it over, and put that in his pocket; that the deed and the mortgage and the two notes were there executed at the same time; that defendant Stone and his wife went out of the room with Mr. Patterson, and closed the door, and, as soon as the door was closed, Stone returned to Patterson the $1,100 check, and, out of the $500 which Jandorf had paid, gave to Patterson $50; and that Patterson afterwards collected the $100 note from Jandorf. Patterson, therefore, paid nothing for his half interest

in the land, but received and appropriated the commission. Jandorf paid $500 in cash, and gave his personal obligations to pay $500 more. Stone claims that, although the consideration was to be but $6,000, Patterson represented that he was anxious that the deed should show that the consideration was $7,000 instead of $6,000, and that Patterson said to him that,—

"The way we will do that,—I will give you my check for $1,100, and, after the papers are made out, why you can give me the check back again."

Testimony was offered tending to show that the land purchased was not worth to exceed $5,000.

Complainant did not discover the fraud until some time in November, and on December 23, 1890, filed the bill to set aside the deed and mortgage, and to compel defendants to refund the amount paid by him. After the bill and *lis pendens* had been filed, Stone assigned the mortgage to one Anderson; and it was admitted that this assignment was without consideration, and was done to avoid the possible consequences of this litigation. The decree below was for complainant, and defendant Stone appeals; and it is insisted here in his behalf—

*a*—That Stone was not a party to the fraud.

*b*—That, after the purchase of the land, Jandorf and Patterson proceeded to plat the land, and actually sold two lots after complainant had been advised of all the facts.

*c*—That complainant, after he learned of the fraud, compromised the matter with Patterson.

*d*—That no demand was made upon Stone prior to the commencement of suit for the cancellation of the mortgage or the return of the notes, and no offer to reconvey the property, or tender of a deed thereof.

1. Unquestionably, Stone enabled Patterson to consummate the fraud, but it is unnecessary to rest his liability upon this ground alone. Patterson was employed by Stone to negotiate a sale of this property. He knew

that the purpose of the representation in the deed as to the consideration was deceit. He knew that his agent had induced another to join in the purchase. The delivery and return of the check were entirely unnecessary, if the object was to deceive some one other than Jandorf. The receipt of it by Stone, the placing of it in his pocket in Jandorf's presence, and the return of it to Patterson in Jandorf's absence, are entirely inconsistent with an innocent purpose, and good faith towards Jandorf.

2. It appeared that, on the 3d day of November, Jandorf and Patterson made a plat of the property, but did not record it, and sold two lots upon said parcel of land upon contract, receiving $15 down, the balance to be paid in monthly installments; but it also appears that, after Jandorf was informed of the fraud, he arranged with the purchaser for a return of his money and a cancellation of the contract, and at the hearing the contract, already canceled, was produced. The platting was done before this sale, and complainant testified that at the time of the sale he had not learned of the fraud. It is true that Patterson contradicts complainant upon this point, but this record does not entitle Patterson's testimony to much weight. It is sufficient that complainant had not dealt with the land as his own after knowledge of the fraud, and defendant Stone cannot now complain if the decree restores to him what he conveyed.

3. When Patterson informed Jandorf that $6,000 was the price paid for the land, and that he (Patterson) had paid nothing, complainant insisted that Patterson should refund the $600 which had been paid by him. Patterson could not pay that sum, and thereupon Jandorf insisted that the amount be secured. Patterson said that he would do so, but it was not done. It is clear that complainant offered to accept the return of the amount

paid by him, but no settlement was arrived at, and this suit was brought.

4. It was not necessary that complainant should reconvey before the bill was filed. He does not seek to retain anything acquired by the transaction. His prayer is that the deed to him and the mortgage back be declared null and void, and that he may be made whole.

The decree is affirmed, with costs to complainant.

MORSE, C. J., LONG and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.