### MAY v. OTTO.

1. CANCELLATION OF INSTRUMENTS — CONTRACTS — RESCISSION — FRAUD.

In a suit for the rescission of a contract for the purchase of a cigar and confectionery business on the ground of alleged fraudulelnt representation as to the amount of weekly net profits, in order to justify a decree for plaintiff it must appear by a preponderance of the evidence that the defendant made the alleged representation, that it was relied on by plaintiff, and that it was false.[1]

2. SAME—EVIDENCE—SUFFICIENCY.

The finding of the court below that said representation was made, and that it was false, *held*, justified by the record.[2]

[1]Cancellation of Instruments, 9 C. J. §§ 26, 189; [2]Id., 9 C. J. § 195; Sales, 35 Cyc. p. 157.

3. SAME—EVIDENCE—FRAUD—TESTIMONY AS TO PROFITS OF BUSINESS ADMISSIBLE TO SHOW FRAUD.

In a suit for the rescission of a contract for the purchase of a cigar and confectionery business on the ground of fraudulent representation as to the weekly net profits, testimony of plaintiff as to the sales and profits for the weeks immediately after she took over the business, which were much less than represented, was properly admitted in evidence, in the absence of any explanation as to the falling off.[3]

4. SAME — RESCISSION — TENDER BACK OF PROPERTY RECEIVED — EQUITY SHOULD BE DONE.

Under the circumstances of this case, it was not necessary for the plaintiff to restore or offer to restore the property she received before seeking a rescission in a court of chancery, but if she is to have a return of what she gave, equity requires that she should give back what she received.[4]

5. EQUITY—RESCISSION OF CONTRACT—EQUITY REQUIRES RETURN OF WHAT WAS RECEIVED.

Where the decree for plaintiff rescinding the sale of a cigar and confectionery business decreed repayment of the cash payment and cancellation of the notes given as part of the purchase price, giving plaintiff a lien on the property to secure such repayment, but took no account of the fact that plaintiff disposed of the stock of goods, the decree is amended, on appeal, by deducting therefrom, the value of said stock.[5]

Appeal from Wayne; Hawley (Royal A.), J., presiding. Submitted June 8, 1926. (Docket No. 9.) Decided December 8, 1926.

Bill by Helen May against Gustav Otto for the rescission of a contract on the ground of fraud. From a decree for plaintiff, defendant appeals. Modified and affirmed.

*Rosenthal, Rosenthal & Rosenthal,* for plaintiff.

*Joseph A. Bloom,* for defendant.

[3]Cancellation of Instruments, 9 C. J. § 194; [4]Id., 9 C. J. § 107; Sales, 35 Cyc. pp. 147, 149; [5]Appeal and Error, 4 C. J. § 3170; Sales, 35 Cyc. p. 158.

McDONALD, J.   Alleging fraud, this bill was filed to secure the rescission of a contract for the purchase of a cigar and confectionery business, and to restrain the negotiation of certain promissory notes given in partial payment thereof.   The contract was in writing and provided for the purchase of the business, including stock, store fixtures, and a three-year lease of the premises, for a consideration of $4,000, of which $2,000 was to be paid in cash, and the balance in equal monthly payments evidenced by 20 notes of $100 each.   The plaintiff made the initial payment and went into possession on February 17, 1925, and while still conducting the business, on February 25, 1925, filed this bill.   Her bill is founded on the claim that the defendant falsely represented to her that the business was prosperous, and that his net profits averaged $100 per week.   Answering, the defendant denied that he made any representation, except as to the gross profits, which he said were $100 a week.   On the hearing the circuit judge found that the plaintiff had sustained the allegations in her bill.   He decreed a cancellation of the notes and gave her a lien on the property to secure the repayment of the $2,000.   The defendant has appealed.

The issue is entirely one of fact.   To justify a decree for the plaintiff, it must appear by a preponderance of the evidence that the defendant made the alleged representation; that it was relied on by the plaintiff; and that it was false.   The only actionable representation relates to the profits of the business. And the only difference in the claims of the parties is whether the representation was of the net profits or the gross profits.   The testimony shows that during the preliminary negotiations the question of profits was up for discussion.   The defendant had been conducting the business for some time and he was the only party who could give a fair estimate of the net profits.

There was no other source from which the plaintiff could get this information.　She was assuming an indebtedness which must be paid out of the business. The defendant reserved title to the property and unless she could make a profit sufficient to pay the notes as they became due she would lose her $2,000 initial payment.　In these circumstances it is not reasonably probable that she would have been content with a representation as to the gross profits.　She naturally would want to know if she could make enough clear money to meet her payments.　The necessity for such information, and the fact that the defendant could furnish it, are circumstances which tend to support the plaintiff's testimony.　It is also supported by the testimony of her husband and by that of Mr. Applefield, the broker with whom the defendant listed the property and through whose agency the sale was made. Mr. Applefield appears to have been a disinterested witness.　He was in no way impeached, and his testimony is convincing that the defendant represented his net profits to be $100 per week.　We think that on this element of the case the circuit judge correctly found with the plaintiff.

The testimony as to whether the representation was false is not so convincing, though we think that on this question also the court reached a correct conclusion.　The plaintiff introduced some testimony tending to show that the representation was false.　The defendant made no offer to show that it was true.　In fact he did not testify that his net profits averaged $100 per week.　He made no such claim.　He claimed that amount represented his gross profits.　He had books showing his daily receipts, but not his profits. He knew the original cost of the goods and the cost of selling them, and he could have estimated his net profits with reasonable certainty.　He did not give the court the benefit of his information on that sub-

ject, apparently preferring to rely on the weakness of the plaintiff's proofs. The plaintiff gave evidence that her net profits for the first week that she conducted the business were $12, and that they did not exceed $24 during any of the weeks following. Her sales and profits during all of the time that she was conducting the business would hardly fairly show the defendant's profits. She may have allowed the stock to run down and her personality and method of conducting the business might furnish some reason for her failure to do the volume of business which defendant did when he was in charge. But this would not be true of the first few weeks. The stock was all there at that time. She had the same goods, the same overhead expense, the same clerks and the assistance of the defendant's wife, who helped to conduct the business before the plaintiff bought it. Under the same conditions her net profits were very much less than $100 per week. There is nothing in the record showing any reason for this falling off immediately after the plaintiff took over the business. The only fair inference is that the defendant misrepresented his profits.

It is insisted that testimony of her sales and profits was not admissible and in support of this contention *Taylor* v. *Saurman,* 110 Pa. 3 (1 Atl. 40), is cited. In that case the sale was of a photographer's business. The success of a business of that kind depends largely upon the skill and workmanship of the person in charge. · It is not so with a cigar and confectionery business. So that the ruling there has no application to the facts and conditions in the instant case. We agree with the circuit judge that there was sufficient evidence of misrepresentation on the part of the defendant.

Under the circumstances of this case, it was not necessary for the plaintiff to restore or offer to restore

the property she received before seeking a rescission in a court of chancery. But if she is to have a return of what she gave, equity requires that she should give back what she received. The decree took no account of the fact that she had disposed of the stock. The evidence shows that it was of the value of $1,000. This amount should be deducted from the $2,000 which the circuit judge decreed should be paid to her by the defendant. In this respect the decree should be modified. In all other respects it is affirmed. The defendant will have costs.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.