SABA *v.* MILLER.

1. EXCHANGE OF PROPERTY—FRAUD—DAMAGE—MISREPRESENTATION AS TO TITLE.

In the exchange of plaintiff's equity in her house, valued at $15,000 for defendants' store, fixtures and stock at same value, it was fraud for latter to represent that title to the store and fixtures was free and clear in defendants whereas a $16,000 balance was due on title-retaining contract of purchase by defendants, which fraud resulted in an immediate damage to plaintiff notwithstanding she was a good-faith purchaser from one in possession.

2. SAME—FRAUD—MISREPRESENTATION AS TO VOLUME OF BUSINESS.

Misrepresentation that gross receipts of business sold plaintiff were $14,000 to $15,000 a month rendered contract for exchange of property voidable and subject to rescission, where sales tax statement for preceding month showed $12,314.04 and average for preceding 6 months was $11,051.18 per month.

3. SAME—RESCISSION—FRAUD—MISREPRESENTATION AS TO STOCK—WAIVER.

Misrepresentation as to amount of goods on hand in wholesale and retail grocery business by virtue of rearrangement of stock and placement of empty boxes and cases so as to deceive plaintiff at time she took over stock for which she had been negotiating for about 2 weeks was so waived by plaintiff as not to entitle her to rescission or other relief for such cause, when she threw out the empty containers and conducted the business for 5 or 6 weeks thereafter.

4. SAME—RESCISSION—TENDER OF RESTORATION.

Restoration or a tender of restoration is not a condition precedent to suit for rescission of an exchange of properties in a suit in equity as such suit proceeds upon theory that there has been no rescission, not on the theory that the rescission has already been accomplished.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur, Fraud and Deceit, § 50.
[1, 2] 52 Am Jur, Trades and Exchanges of Property, §§ 39, 40.
[2] 23 Am Jur, Fraud and Deceit, § 68.
[3, 5] 52 Am Jur, Trades and Exchanges of Property, §§ 66, 68.
[3] Time for rescission by purchaser of chattel for fraud or breach of warranty. 72 ALR 726.
[4, 6] 52 Am Jur, Trades and Exchanges of Property, §§ 64, 65.
[5] 24 Am Jur, Fraud and Deceit, § 210.

5. Same—Rescission—Laches—Waiver of Some Fraud.

Plaintiff did not bar herself from relief by way of rescission of exchange of her house for defendants' grocery store, fixtures and stock, notwithstanding she waived fraud as to amount of stock, where she acted promptly to obtain rescission upon discovery of the fuller, other, different and greater extent of fraud as to gross sales of the business and as to the fixtures being free and clear.

6. Same—Rescission—Status Quo.

The matter of placing defendants *in status quo* in suit for rescission of exchange of plaintiff's house for grocery store, fixtures and stock is not open for further consideration where the amount of stock was substantially the same when defendants took repossession as when they had given possession to plaintiff.

7. Same—Rescission—Accounting—Fraud.

Accounting for loss sustained by plaintiff, attributable to defendant's fraud in misrepresenting status of title to store and fixtures and amount of gross business but not for loss attributable to plaintiff's mismanagement, default or neglect, is allowed, where plaintiff is entitled to rescission of contract for exchange of property.

Appeal from Oakland; Doty (Frank L.), J. Submitted January 11, 1950. (Docket No. 58, Calendar No. 44,668.) Decided April 3, 1950.

Bill by Edna M. Saba against Ralph Miller and wife to rescind exchange of plaintiff's house for defendants' grocery and meat business. Decree for defendants. Plaintiff appeals. Reversed. Decree entered for rescission and cause remanded for accounting.

*Edward N. Barnard,* for plaintiff.

*Estes & Cooney,* for defendants.

Reid, J. Plaintiff Saba filed her bill of complaint in chancery, January 24, 1949, for rescission on ground of fraudulent misrepresentations, of an

agreement partly evidenced in writing for exchange of plaintiff's residence property for defendants' wholesale and retail grocery and meat business. From a decree for defendants dismissing the bill, plaintiff appeals.

Plaintiff saw in a Detroit newspaper of November 7, 1948, defendants' advertisement which was as follows:

"WHY LOOK FURTHER  Grocery, Super-Meats and Vegetables—2 walk-in boxes, new elec. meat saw, new 1½-h.p. grinder, new 30′ vegetable stand, new cubing machine, 12-hole freezer, sausage machine, smoke house, check-out counters, 40′ meat cases, 20x40 extra storage space, gas heat, large stock, doing $15,000 month, half dn. of $7,500 takes it.  Long lease.  WO 5-2685."

Plaintiff in consequence of the advertisement went to the store in question, there met defendant Mr. Miller, looked inside the store, noted it seemed well-stocked, and asked defendants Miller to look at plaintiff's house, which plaintiff proposed to trade to defendants for the store and fixtures, but complained that the store was larger than the store she was familiar with, which had been operated by plaintiff and her lately deceased husband.  Plaintiff told Mr. Miller that she needed $1,000 or $1,500 capital to operate the store, and he suggested he could loan plaintiff $1,000 for working capital.  Plaintiff valued her equity in her residence at $15,000 and defendant placed $15,000 as the value of the store.  Defendant Miller in his testimony said the stock of merchandise in the store was worth $5,000.

Defendant Miller told plaintiff that the fixtures and equipment were in good condition and free and clear.  Defendant Miller made an affidavit dated November 20, 1948, which excepting the caption, signatures and jurat, is as follows:

"Ralph Miller, of the city of Detroit, county of Wayne and State of Michigan, being first duly sworn, deposes and says:

"That he is the sole owner of a super market conducted by him at 22101 Federal avenue, Van Dyke, Michigan, which said super market is conducted under the firm name and style of 'Federal Super Market,' and that said super market business, including all of the stock of merchandise and all of the fixtures, equipment and supplies therein, are free and clear of all indebtedness, liens and encumbrances whatsoever;

"That he makes this affidavit for the sole purpose of complying with the bulk sales law * of the State of Michigan in the sale of the said super market, including the fixtures, equipment and stock of merchandise thereof, to Edna M. Saba;

"That the following constitutes a full, complete and accurate list of all of his creditors and indebtedness of his said business and of any other and all kinds and nature whatsoever:

"*NONE*

"Deponent further says that he makes this affidavit with the full knowledge that Edna M. Saba, purchaser of said business, will act in full reliance thereon."

It appears, however, that most of the fixtures had been purchased (and were in process of being paid for) by defendant Miller on a title-retaining contract on which there was then over $16,000 unpaid, with one instalment in default, and the contract contained an acceleration clause.

The parties made the contemplated exchange on or about November 20, 1948, on which date plaintiff gave defendants a deed of her residence subject to a mortgage for about $5,100, which deed was recorded December 30, 1948; and defendants gave

---

* CL 1948, §§ 442.1–442.3 (Stat Ann §§ 19.361–19.363).—Reporter.

plaintiff a bill of sale of the certain business known as the Federal Super Market together with certain fixtures, stock of goods and equipment described in the bill of sale. Plaintiff went into possession of the store and of the stock of goods and fixtures the same day, November 20, 1948, and conducted the store business about 2 months, at which time she closed the store, informed defendants of such closing, and she then sought rescission.

The parties discuss 6 propositions in their briefs:

One. Whether or not plaintiff suffered damage because of what the parties in their briefs and the court in its opinion, speak of as the lien (which was in fact a title retained in the contract by which defendant Miller purchased).

Defendants argue that although a Mr. Meyers retained title to the fixtures as though part of the real estate in his land contract of sale to defendant Miller and Warshaw (Warshaw afterwards sold to defendant Miller) yet because Meyers did not dispossess plaintiff, that plaintiff suffered no damage by reason of Miller's misrepresentation of free and clear title. Defendants argue that plaintiff having become a purchaser in good faith from one in possession, she could not be considered damnified. Such claim by defendants is without merit. Plaintiff's damage was immediate. The agreement that the fixtures were the property of defendants free and clear, was breached as soon as made. Plaintiff could not without her choice be put by defendants' fraud in a position where she must assert her own good faith to prove her title in lieu of a good title from defendant Miller, who swore he had such good title.

Plaintiff did not know what Meyers' action might be. Plaintiff might have been put to expense of proving her *bona fides* in a suit brought by Meyers (who is not a party to this case) if she had attempted to

stand on title by bona fide purchase from those in possession. She was not compelled to litigate title. She did not bargain for a law suit. See *Scadin* v. *Sherwood,* 67 Mich 230, 232, 233.·

Two. Whether or not there was fraudulent misrepresentation of the gross receipts of the business.

The advertisement hereinbefore quoted said, "doing $15,000 month." Defendant testified, "I told her [plaintiff] it was doing over three thousand dollars a week," which would be $13,000 a month. Sales tax statements showed an average of $11,051.18 per month for the 6 months preceding November, 1948, near the beginning of which month the ad appeared. It is fairly to be considered that the statement of $3,000 a week was a misrepresentation of the gross receipts even under defendant's own statement. However, the statement in the advertisement is $15,-000 a month. Plaintiff testified that defendant Miller said that the store was doing $14,000 to $15,000 a month, and that his personal statement to her was that they had taken in over $14,000 the previous month. The sales tax statement showed $12,314.04 for October, 1948.

We find that there was a material misrepresentation to plaintiff of the gross receipts of the business, something more than mere seller's praise, especially since the actual receipts were totalled for sales tax purposes. Such fraudulent misrepresentation rendered the contract voidable and subject to rescission. See *Chmielewski* v. *Nau,* 324 Mich 375; *McIntyre* v. *Lyon,* 325 Mich 167.

Three. Whether or not, as plaintiff claims, defendant Miller misrepresented to plaintiff the amount of goods in the store.

Plaintiff testified that defendant Miller at her first interview with him early in November, 1948, told her the stock when she completed the deal would be the same as it then was, and that when she later

came to close the deal November 19th, the stock had been rearranged, and empty boxes and cases so placed as to deceive her into thinking there was more than the actual amount of goods on hand. Defendant Miller on November 17th gave no replacement of goods order to the wholesaler's agent as per usual. While on consideration of the whole testimony we are convinced of the truth of plaintiff's statement as to defendant's fraud in that regard, still it is apparent that plaintiff on taking possession of the store under the exchange of properties on November 20, 1948, at once proceeded to rearrange the stock, throwing out empty boxes and cases and moldy meat, and conducted the store business for about 5 or 6 weeks later. We consider plaintiff waived the particular fraud and misrepresentation as to amount of goods on hand, and do not award her relief on the ground of that particular misrepresentation.

Four. Whether or not plaintiff is entitled to rescission in chancery.

The court in his opinion said, "The case turns on the question of rescission  *  *  *  on proper tender," and also, "There was not a proper tender, consequently there can be no rescission."

We gather that the court applied the rule in a suit at law as to rescission. But the instant case is in chancery and is governed by the chancery rule.

In her bill, plaintiff states that because of the untrue and fraudulent representations of defendants, "she hereby elects to declare such conveyance [of her residence] void and demands the reconveyance of said premises to her, she hereby offering and agreeing to return to defendants the business, good will, stock and fixtures which they sold and transferred to her."

With reasonable promptitude after discovery of the misrepresentations as to amount of business

transacted and of the falsity of defendants' representation as to ownership of the fixtures being free and clear, plaintiff sought legal aid and advice, and as soon as she fairly could, filed her bill. Further, on January 27, 1949, plaintiff's attorney wrote defendants, notifying defendants of plaintiff's closing the store, and agreeing to surrender to defendants the business in pursuance of plaintiff's bill of complaint.

We said in *Maurer* v. *Iden,* 242 Mich 568, 571:

"While restoration or a tender of restoration is a prerequisite to recovery in a suit at law on the ground of rescission, it is not a condition precedent in this type of case, where cancellation or rescission is sought by bill in equity. This rule is well stated in *Witte* v. *Hobolth,* 224 Mich 286, in the following words:

" 'It is said that plaintiff neither restored nor offered to restore to defendant the property received before seeking rescission. Neither was necessary. A bill in equity praying rescission proceeds on the theory that there has been no rescission, not on the theory that rescission has already been accomplished. Were plaintiff to sue at law for the money he paid defendant he should, before suit, restore or tender restoration of, the property he received that by his own act he thus may have legal right and title to the money. See 9 CJ, p 1215; *Jandorf* v. *Patterson,* 90 Mich 40.' "

See, also, *May* v. *Otto,* 236 Mich 540, 544, 545; *Gyles* v. *Stadel,* 252 Mich 349, 352; *Dorgan* v. *Birney,* 272 Mich 145, 151; *Mesh* v. *Citrin,* 299 Mich 527, syllabus 7.

Five. Whether or not plaintiff has been guilty of laches. We have hereinbefore found that plaintiff waived the fraud as to the amount of goods on hand. However, we find that plaintiff acted promptly to obtain rescission on discovering the

fuller, other, different and greater extent of fraud, including the fraud as to the gross sales of business and fraud as to the fixtures being free and clear, wherefore plaintiff is not barred of her cause of action.

Six. Whether or not plaintiff has or can put defendants *in status quo.*

Defendants claim that they cannot be put *in status quo* because the condition and amount of the stock of goods is different now from what it was at the exchange on November 20, 1948. The stock of goods as of the day of the repossession by defendants was substantially the same as it was at the time of the exchange on November 20, 1948, and that question need not be further litigated.

The decree appealed from is reversed. A decree will be entered in this Court directing the retransfer by defendants of plaintiff's residence to plaintiff and the retransfer of the stock and contents of the store and lease by plaintiff to the defendants, and that in lieu thereof our decree may be recorded with like effect as though such retransfers had been executed by the parties.

Plaintiff is entitled to an accounting for loss sustained by plaintiff attributable to defendants' fraud and not attributable to plaintiff's mismanagement, default or neglect. The cause is remanded to the lower court for a full accounting between the parties excepting as aforesaid, that is, that the goods left by plaintiff in the store shall be considered equal in value to what she received, and that plaintiff shall be considered as not having been negligent or dilatory in filing her bill. Costs to plaintiff.

BOYLES, C. J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.