MILLER *v.* VOORHEIS.[1]

VENDOR AND PURCHASER—MISREPRESENTATIONS—RESCISSION—CAVEAT EMPTOR.

> The falsity of representations made by the owner and proprietor of an hotel to induce a purchase of the property by one wholly ignorant of its value and earning capacity, to the effect that it was worth from $6,000 to $8,000, and that its net earnings to him had been $100 per month, entitles the purchaser to a rescission of his contract to purchase for $6,000; the rule of *caveat emptor* not applying where the statement relates to a material fact solely within the knowledge of the seller.

Appeal from Clinton; Daboll, J. Submitted October 5, 1897. Decided December 21, 1897.

Bill by Robert F. Miller and Victoria Miller against William T. Voorheis to rescind a contract for the purchase of real estate. From a decree dismissing the bill, complainants appeal. Reversed.

*Almond G. Shepard* and *Edwin H. Lyon*, for complainants.

*High & Everett* (*William A. Norton*, of counsel), for defendant.

LONG, C. J. The bill in this cause was filed to set aside a certain contract for real estate, to discharge a $1,500 mortgage, and for an accounting for $500 paid when the contract was made. On the hearing, the court below dismissed complainants' bill, with costs.

Complainants are husband and wife. The bill sets up that in 1895 they owned certain hotel property in Elsie,

---

[1] Rehearing denied February 16, 1898.

Clinton county, worth about $5,000; that defendant owned certain hotel property in the village of Ovid, Clinton county; that he, in person and by his agents, solicited them to purchase the hotel property at Ovid, and, in order to induce them to purchase, represented the property to be of the value of upwards of $6,000, and that said property had been occupied and operated by defendant for about one year immediately prior thereto, at a profit to him of $100 per month, and that the parties occupying it prior thereto had made a profit of $100 per month during all the time it had been occupied by them; that, upon these representations, the complainants purchased the property of defendant, taking a contract in writing therefor. The contract expresses a consideration of $6,000, to be paid, $500 at execution of the contract, $1,500 note, with mortgage on the Elsie property owned by complainants, due in three years, with interest at 7 per cent., $1,000 to be paid in 18 months, and the balance, $3,000, to be paid in five years, with interest at 7 per cent. The property covered by this contract was the hotel property at Ovid, and all furniture in the hotel, except certain goods mentioned. The bill sets up that the $500 was paid down, and the $1,500 note and mortgage made and delivered; that complainants took possession of the property, but were unable to make any profits whatever. And they allege that the representations made by the defendant were false; that he made no profits there; and that the property was not of the value of $6,000, as represented by defendant. It is also claimed by the complainants that the complainant Robert F. Miller was old and infirm, and unable to transact business, and hence easily misled by the false representations of the defendant.

The defendant answered the bill, and claimed:

1. That he did not make any representations as to the value of the property.

2. That the property was worth all he obtained for it,

and all that complainants contend he represented it was worth.

3. That the net earnings of the property were, in fact, $100 per month.

4. That the complainants were familiar with the value of the property, and had as their advisor and counselor one Barton M. Besley, their son-in-law, who was an experienced business manager and hotel keeper.

Complainants gave testimony tending to support the claim made by the bill, both as to the representations claimed to have been made by the defendant, and as to the actual value of the property. Defendant testified that he never made any representations as to the value of the property or the earning capacity of the hotel.

We think the testimony clearly shows that the defendant represented the value of the property to be from $6,000 to $8,000. It is said, however, that, even if such representations were made, they were not such representations as the complainants had a right to rely upon; that they saw the property, and had a son-in-law there, who was an hotel keeper; and that they were advised by him. The complainants testify that they did rely upon such representations, and were induced thereby to buy. Undoubtedly the general rule is that any purchaser must expect that the vendor will seek to enhance his wares, and must disregard the vendor's statements as to value. But this case is one where the vendor had the opportunity to know the value much better than the vendees could. He had kept the hotel there. He knew its earning capacity. If it had earned $100 per month, aside from the bar, it was of greater value than it would have been if it had less earning capacity. The representations must be taken as a whole. It is, we think, shown that the defendant represented that it would earn $100 per month, and had earned that, aside from the bar, for the five months prior, during which time he had himself operated it. The complainants claim to have relied upon that statement. If

that had been true, the property might have been worth the amount paid. If it were not true, it would doubtless be worth much less. At least, that had some bearing upon the question whether the complainants relied upon defendant's representations as to value. The defendant knew that complainants were wholly ignorant of its earning capacity,—what it had earned, and what it might likely earn. Defendant knew what it had earned, and was in better position than complainants to judge what it was likely to earn in the future. Under these circumstances, the representations did not take the form of a mere expression of opinion. They were statements of facts, upon which complainants had the right to rely, and the rule of *caveat emptor* does not apply. *Maxted* v. *Fowler*, 94 Mich. 109, and cases there cited.

The learned circuit judge saw the witnesses, and had an opportunity to better judge of their candor and fairness; yet, from a reading of the whole record, we are compelled to disagree with him. The hotel was, as some of the witnesses describe it, "a rocky old shell." Many witnesses have given their estimate of value, and from this testimony, given by witnesses on both sides, we are compelled to find that the property was of much less value than represented. If it had the earning capacity represented, we might not have reached that conclusion. The complainants, together with their daughter and her husband, took possession of the property, the son-in-law operating the bar. They operated the hotel one year. In the meantime they had discovered that it was not worth the price, and, as they claim, that the defendant had not made the profits from it which he claimed. They went to defendant about it, and he promised them he would get rid of the property. This he tried from time to time to do, but, not succeeding, the complainants told him they proposed to rescind the sale. They moved out, and tendered him back the real and personal property, which

he refused to take, though he took possession of it, and rented to other parties.

In the negotiations for the sale, the defendant was assisted by John M. Bryson, and upon the hearing it appeared that Bryson was paid by the defendant 3 per cent. of the selling price. The complainants were not informed that Bryson was acting for defendant in making the sale. They claim he pretended to be their friend, and advised them that there was money in the property at $6,000; that they must purchase right away, as he knew another stood ready to take it if they did not; that defendant had made more than $100 a month clear profit out of it. The answer sets up that Besley was acting for complainants, and "spoke to one John M. Bryson, * * * and requested him to find out how and on what terms this defendant would sell the hotel property mentioned in the bill of complaint. In pursuance of said conversation with said Besley, the said Bryson came to this defendant, and this defendant then and there stated to said Bryson that he would sell the property," etc. From this answer it would appear that Bryson was acting for the complainants. At least, it is apparent that neither the defendant nor Bryson let the complainants know that Bryson was acting for the defendant, when in fact he was in defendant's employ. The complainant Robert F. Miller was an old man, and was easily led to believe the representations made by Bryson and defendant that the hotel paid $100 per month.

But it is contended by the defendant that the hotel actually had an earning capacity of $100 per month, aside from the bar. We are unable to agree with this contention. There is considerable evidence in the record on this question. Lewis Fox, a witness for the complainants, testified that he was clerk for the defendant while he kept the hotel, and prior to that had been the clerk there under Retan, when he kept it; that, although Retan had much

more trade than the defendant, it did not pay its way, but he had to take money from the bar to keep the hotel running. The defendant introduced his books in evidence, kept while he operated the hotel, in which were entered the receipts and expenditures; but these are not very satisfactory as explaining the whole expense account, when the testimony of the defendant is considered.

From the whole evidence, we are satisfied that the complainants' contention is correct that the hotel was not paying $100 per month; nor was it worth the amount represented. It was not the "bonanza" that Bryson represented it to be. There was such misrepresentation in regard to the value and earning capacity that the complainants have the right to a rescission.

The decree below must be reversed, and a decree entered here in accordance with the prayer of the bill. The complainants will recover the costs of both courts.

MONTGOMERY and HOOKER, JJ., concurred with LONG, C. J.

MOORE, J. (*dissenting*). I cannot reach the same conclusion arrived at by the Chief Justice. The record shows that complainants had known the hotel property for years. Prior to its purchase, with their son-in-law, they made an examination of the property. After the papers were drawn, they were left with the scrivener for some days before delivery, and were not delivered until complainants had an abundant opportunity to learn further about the property, if they desired. I think the proofs disclose a case where the doctrine of *caveat emptor* should apply.

The testimony is conflicting. The trial judge had the witnesses before him. His opportunity for deciding who of them were truthful, and who were not, was much better than ours. I think, with the trial judge, that the

complainants have failed to establish the case stated in their bill of complaint.

The decree should be affirmed.

GRANT, J., concurred with MOORE, J.