JOHNSON v. CAMPBELL.

1. FRAUD—DAMAGES—RESCISSION.

Where, upon discovery of the fraud practiced by the seller of a moving picture business, the purchaser repudiates the contract by surrendering to the seller the property and demands back the amount paid, he is entitled in an action for damages for fraud to recover what he paid for the business together with the amount expended by him in carrying it on up to the time that the fraud should have been discovered.

2. SAME—DAMAGES—INSTRUCTIONS—EVIDENCE—SUFFICIENCY.

In an action for damages for fraud in the sale of a moving picture business, evidence held, sufficient to warrant an instruction based on the theory that plaintiff had rescinded his contract of purchase.

3. EVIDENCE—ADMISSIBILITY—CONVERSATIONS—ADMISSIONS.

Conversations between the seller of a moving picture business and certain of his employees in which the former told the latter that he was losing money in the business, are admissible in evidence as admissions against interest in an action by the purchaser of the business for damages for fraud.

4. FRAUD—DAMAGES—EVIDENCE—SUFFICIENCY.

In an action by the purchaser of a moving picture business against the seller for fraud, evidence held, sufficient to warrant the submission to the jury of the question whether or not the representations alleged to have been made by the seller as to the earnings of the theater were true or false.

5. SAME—FALSE REPRESENTATIONS—DEFENSES—CAVEAT EMPTOR.

Where a person makes false representations as to material facts which are exclusively within his knowledge and another relies upon such representations to his injury, liability follows, and the person making the representations cannot defend an action for damages on the ground that

the person injured should have been more vigilant and less credulous.[1]

6. SAME.

The doctrine of *caveat emptor* cannot be invoked as a defense to an action by the purchaser of a moving picture business for fraud where the seller falsely represents that the business has been a profitable one.

Error to Wayne; Wiest, J., presiding. Submitted October 24, 1917. (Docket No. 126.) Decided December 27, 1917.

Case by Ulous A. Johnson against Duncan A. Campbell for fraud and deceit. Judgment for plaintiff. Defendant brings error. Affirmed.

*A. G. Pitts*, for appellant.

*James H. Pound* and *H. H. Markham*, for appellee.

KUHN, C. J. This action arises out of a sale of a moving picture business located on Gratiot avenue in the city of Detroit. A judgment was recovered by the plaintiff in an action for damages for fraud against the defendant.

The plaintiff, who had been employed by the Pullman Car Company for a period of about 19 years, decided to engage in the theater business, and, through an advertisement which he saw in the Detroit papers, entered into negotiations with the defendant for the purchase of this theater, known as the "Unique." The price asked for the theater was $6,000, and the terms of payment, which were agreed upon by the parties, provided that the plaintiff was to pay to the defendant $1,000 in cash and assign to him a land contract, of the value of $1,300, which payments were made, and further provided that the balance of $3,700 was to be paid at the rate of $100 per month on the 1st days of July, August, and September, 1914, $150 per month

[1]On right to rely on representations made to effect contract as a basis for a charge of fraud, see note in 37 L. R. A. 593.

on the 1st days of October, November, and December, 1914, and thereafter at the rate of $200 or more on the 1st day of each month until the balance should be paid, with interest. The written contract also provided for the transfer of the lease, and that Mr. Campbell should not again engage in the show picture business or cater to colored people in the city of Detroit.

It is the claim of plaintiff that, at the time the negotiations were entered into as aforesaid, the defendant then and there represented to him that the theater had for a long period showed a net profit, over and above all expenses, of from $350 to $500 per month, and it is his claim that he took possession of the theater, and, with the assistance of Mr. Fred Finley, who had also been employed by Mr. Campbell as ticket taker, ran the theater for approximately a period of 30 days. It is his further claim that the business, instead of being a profitable one, was unprofitable, and that on or about the last of June, he surrendered the theater, and turned it back to Mr. Campbell who again took possession of the theater, as he claims because he was liable on the lease. The trial resulted in a judgment for the plaintiff in the sum of $2,530.

It is the contention of the defendant and appellant that the court erred in submitting to the jury the claim that the contract had been rescinded. The trial judge did charge the jury:

"If, upon discovery of the fraud practiced upon him by defendant, the plaintiff repudiated the purchase, by surrendering what he had received to defendant, and demanded back what he had paid, then he is entitled here, in case you find in his favor, to recover what he paid for the theater, together with the expense brought upon him in operating the same up to the time the fraud should have been discovered."

There is no claim that this is not a proper exposition of the law, if there are any facts to sustain it; but it is earnestly contended that there is no evidence

whatever upon which to base this part of the charge, and it is claimed that the evidence shows that the defendant took possession under the contract, and that there is no evidence that the plaintiff surrendered the theater, and that there was a rescission of the contract. We are unable to agree with this contention of the appellant, and we are of the opinion that there was sufficient evidence to submit the theory of a rescission of the contract to the jury. The plaintiff testified, after stating what the receipts had been during the period that he was in possession:

"Then I decided to give it up, and gave the keys to the manager to give to Mr. Campbell. I told Mr. Campbell that I had discovered that the deal was a fraud, and had decided to recover the money and property, if I could, by law; that it was a losing proposition from the start. He laughed in my face. I think I paid out $230 more than my receipts during the first four weeks, and that does not include my time. I retained the same manager that Mr. Campbell had after I took the theater, and the same employees."

Mr. Finley, his manager, stated that, when Mr. Johnson quit, he gave the keys back to Mr. Campbell, and further stated:

"About the second week that Mr. Johnson had the place, Mr. Campbell dropped in there one morning and asked me how the business was. I told him it was very bad, and he laughed. He said: 'Well, I will have the place back again very shortly.' I told him that Mr. Johnson was thinking of closing the place up, and Mr. Campbell said: 'On no consideration let him close the place up. If he tells you to close, you telephone out to my house, and I will come, and your salary will keep going on. I don't want to close this place up. Once it is closed up, it will be a dead one.'"

The testimony further shows that on May 19th Mr. Johnson visited the theater with the agent who had the sale in charge, and found the house packed, and

it was on that night that he gave the agent $100 to close the deal. Mr. Finley stated that Mr. Campbell gave him 200 tickets and told him—

"to distribute them in the highways and byways, so that when Mr. Johnson did come over there, there would be a crowded house. There was a couple of colored fellows, he gave them a bunch of tickets, and told them to go out and distribute them."

Mr. Finley, and also Mr. Kelsey, who was another employee of Mr. Campbell at the time he sold to Johnson, testified as to conversations they had with Mr. Campbell, in which they claimed he said that he was losing money in the theater business. The defendant claims that he had no confidence in Mr. Finley, and purposely misled him, and that he was not bound to tell either Mr. Finley or Mr. Kelsey the truth, and that he had his reasons for not doing so. It is urged that the court erred in admitting this testimony, but we are of the opinion that it was properly admitted as showing an admission against the interest of the defendant.

It is next urged that the defendant's books, which were offered in evidence, conclusively showed that the business of the theater had been a profitable one, and that no effort was made by the plaintiff to impeach this record testimony, and that the court erred, therefore, in refusing defendant's request to charge that there is no evidence of any false representation of facts. The books of account unquestionably sustain the defendant's claims with reference to the business being a profitable one; but in view of the testimony of Finley and Kelsey as to his admission that he had been losing money, and with the fact that immediately after turning the business over to the plaintiff, under the same management, and practically under the same conditions, the receipts immediately fell off, there was, in our opinion, sufficient evidence to warrant the sub-

mission to the jury of the question whether or not the representations which it is alleged he made to the plaintiff as to the earnings of the theater, and which related to a material fact, were true or false. See *Miller* v. *Voorheis,* 115 Mich. 356 (73 N. W. 383); *Kimble* v. *Gillard,* 177 Mich. 250 (143 N. W. 79).

It is further urged that the plaintiff should have made further investigations than the record discloses he did of the business which he was contemplating purchasing, and that the doctrine of *caveat emptor* should be here applied. This question has very recently had the consideration of the court in the case of *Schweyer & Co.* v. *Mellon,* 196 Mich. 590 (162 N. W. 1006), where Mr. Justice FELLOWS, speaking for the court, after reviewing some leading Michigan cases, said:

"Where one makes false representations of material facts, which are exclusively within his knowledge, and the other party relies upon them to his injury, liability for such false representations follows, and it does not lie in the mouth of the party perpetrating such fraud, when called to account, to say that his victim should have been more vigilant, should have been less credulous."

We have examined all the assignments of error relied upon by appellant, and find them without merit. The issue involved in our opinion was submitted to the jury under proper instructions.

The judgment is therefore affirmed.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.