BACON v. FOX.

1. EXCHANGE OF PROPERTY—RESCISSION—FRAUD.

Inspection of property and anxiety to purchase it on part of plaintiff do not prevent rescission where evidence shows defendants had reacquired property once before on rescission for fraud and controlled all negotiations with plaintiff through superior knowledge of the law and because of trusting nature of plaintiff and her husband.

2. FRAUD—EVIDENCE—AFFIDAVIT—EXCHANGE OF PROPERTY.

Affidavit of party to exchange of house for gristmill that she had thoroughly investigated mill, that her husband was an experienced miller and could judge a mill, that no representations had been made as to profits by mill owner or his agents and that she was purchasing on information obtained by herself or husband held, evidence of fraud in action to rescind exchange of real estate, where affidavit was made at suggestion of mill owner's son-in-law, an attorney, to build up defense for anticipated action of fraud.

3. EXCHANGE OF PROPERTY—RESCISSION—FRAUD—GRISTMILL.

Fraud of gristmill owner in having vendee's interest in a house conveyed to him and his wife and giving lease on mill not signed by his wife, instead of agreed land contract, with rent and other payments larger than profits of mill would justify, fact that he knew lessees of mill had no other income and misrepresentations as to profits and condition of mill held, to warrant rescission of exchange.

4. Same—Rescission—Status Quo—Money Damages.

On rescission of exchange of property, plaintiff is entitled only to be put *in status quo ante,* money damages being decreed as a substitute when restoration is impossible.

5. Same—Parties.

Plaintiff, seeking rescission of exchange of house for gristmill, should have made mill owner's wife a party to suit where house had been conveyed to both her and her husband.

6. Same—Modification of Decree—Reconveyance.

Decree rescinding exchange of house for gristmill for fraud but requiring defendants to pay trade price of house is modified to permit reconveyance of house although offer to do so was belated.

Appeal from St. Joseph; Jacobs (Theo T.), J. Submitted April 12, 1934. (Docket No. 92, Calendar No. 37,692.) Decided June 4, 1934.

Bill by Kathryn Bacon against J. Grant Fox and others for rescission of an exchange of property and other relief. Decree for plaintiff. Defendants appeal. Modified and affirmed.

*Carroll B. Jones (Harry C. Howard,* of counsel), for plaintiff.

*Clarence A. Bradford,* for defendants.

Fead, J. Plaintiff had decree rescinding a trade of real estate for fraud.

Defendant Fox owned a waterpower gristmill, which he had sold twice and which had been returned to him, the first time voluntarily and the second time on rescission for fraud. *Mezak* v. *Fox,* 253 Mich. 326. In the summer of 1932 defendant Bradford, an attorney and son-in-law of Fox, advertised the property for sale. Plaintiff's husband answered the advertisement and negotiations for a trade extended from July to November 7th.

Plaintiff and her husband visited the property twice. Bacon had had some experience in flour mills but knew little about waterpower. Both were guilty of exaggerations in their claims of reliance on alleged representations of conditions at the mill. But the testimony justified the conclusion of the court that representations were made to them, and induced the trade, to the effect that the water wheel would develop 100 horsepower, the mill would produce 25 barrels of flour per day, the profit was $1 per barrel, the mill was in good condition and Fox could and would sell its entire output. The representations were substantial elements of the trade and were false.

Defendants make much of the fact that plaintiff and her husband inspected the property and the correspondence demonstrated their anxiety to purchase. Ordinarily the argument would be of much weight but in the instant case the whole transaction indicates control and direction of the negotiations by defendants, arising out of their superior knowledge of the law and the trusting nature of plaintiff and her husband, particularly demonstrated in the execution of the instruments of conveyance.

The trade price of the mill was $9,000. The Bacons had a land contract vendee's interest in a house and lot in Highland Park. The original purchase price was $7,500, upon which there was owing about $2,200, including mortgage of $1,750 and some interest and taxes. Mrs. Fox told the Bacons they needed no attorney to represent them as Mr. Bradford would act for both. We are not convinced that Bradford so understood his position but the Bacons did. Bradford drafted the papers. Instead of a land contract for the mill, Fox executed a lease providing for $50 per month rent and about $50 per month for taxes, interest and insurance, Fox agree-

ing to convey title on payment of $7,000 principal and other charges. Mrs. Fox did not sign the lease. But the conveyance of the Highland Park equity ran from the Bacons to Mrs. Fox. Plaintiff and Fox executed a sales agreement by which Fox agreed to "devote such time and effort as he can to the sale of feeds and flours" produced at the mill and he was to receive a commission on all flour sales in the mill, whether made by himself or others. Plaintiff executed an affidavit, at suggestion of Bradford, to the effect that she had thoroughly investigated the mill, her husband was a miller of several years' experience and able to judge a flour mill, no representations as to profits or earnings had been made to her or Bacon by Fox, his attorney, agents or employees, and she was purchasing on information obtained by herself or her husband. Plaintiff took possession of the mill December 1st and, within a month, Fox deeded the property to Mrs. Bradford but no notice was given plaintiff of the conveyance nor was the deed recorded until May, 1933.

The court gave much weight, as a badge of fraud, to the affidavit executed by plaintiff. Defendants claim it was a fair precaution to obviate later claim of fraud. The character of the conveyances and the juggling of the titles make us think the court was right, advantage was taken of the lack of acumen of the Bacons, and it was an attempt to build up a defense for fraud of which Bradford knew or had suspicions.

As part of the deal the Bacons gave security on two burial crypts to secure inventory of goods on hand. Later they were sold by Bradford for $500 and the amount used by him to pay the inventory and moneys due on the lease. In June, plaintiff complained that she could not make payments out of the earnings of the mill, said she would not have

agreed to pay so much had it not been for misrepresentations and asked readjustment of the contract. A meeting was arranged for July 1st to discuss a readjustment. On that day defendants demanded strict fulfilment and gave notice of forfeiture for default in the June and July payments.

The whole transaction had a basis of overreaching. Defendants knew plaintiff had no other source of income than the mill to make payments. The payments were so large that she had little or no chance to meet them. The mill was not profitable. It was not in the condition represented. The conveyances were not straight-forward but were designed to complicate the situation and confuse plaintiff. Defendants moved with celerity to acquire all plaintiff's property and to declare forfeiture. From the whole situation, we are convinced the court reached the right conclusion in finding fraud and ordering rescission.

However, we think the decree should be modified. Plaintiff did not make Mrs. Fox a party, although she took title to the Highland Park property. Defendants offered to reconvey the Highland Park property on decree of rescission. Instead of permitting reconveyance the court ordered money decree for $2,000, the price at which the property was taken in the trade. There was some excuse, in the attitude of Mrs. Fox and her husband on the stand, for the court disfavoring the belated offer to reconvey. However, on rescission, plaintiff is entitled only to be put *in statu quo ante* and it is when it is impossible to do so that money damages may be decreed as a substitute for reconveyance. Plaintiff should have made Mrs. Fox a party.

We think the decree should be modified to permit defendants to reconvey the Highland Park property on rescission. When a proposed decree is presented,

there are certain small money items of account which can be adjusted. No costs will be allowed in this court.

NELSON SHARPE, C. J., and POTTER, NORTH, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.