RICHARD *v.* DETROIT TRUST CO.

1. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT—OFFER AND AC-
CEPTANCE—CONSIDERATION.

Antenuptial agreement of plaintiff which constituted an offer
to waive her rights in both real and personal property of
intended husband, should the parties marry and which offer
was accepted by marriage, *held,* a binding promise supported
by sufficient consideration.

2. COURTS—SUPREME COURT—OPINIONS—HEADNOTES.

Headnote written by justice is considered as part of an opinion
in which the entire court concurred.

3. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT—VALIDITY.

Antenuptial agreement is valid and enforceable when entered
into by parties of mature years who understand its mean-
ing, if it is based on a sufficient consideration and fraud is
absent, since it is not against public policy.

4. SAME—ANTENUPTIAL AGREEMENT—BETROTHAL—FRAUD—BURDEN
OF PROOF.

One charging fraud or breach of confidence in the procurement
of an antenuptial agreement during betrothal has burden of
proof of establishing it, although such relation is a con-
fidential one requiring good faith, fair dealings and open
disclosure.

5. APPEAL AND ERROR—CREDIBILITY OF WITNESSES—EQUITY.

On appeal in equity case, the credibility of witnesses is usually
left to the determination of the trial court, although the
Supreme Court is not so strictly bound by findings of fact
as where appeal is from action at law.

6. HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT — FRAUD — EVI-
DENCE.

Evidence of fraud in the execution of an antenuptial agreement
*held,* insufficient to warrant reversal of decree dismissing bill
to have agreement declared null and void since fraud is not
lightly to be presumed but must be shown by a preponderance
of the evidence.

Appeal from Wayne; Webster (Clyde I.), J. Submitted October 3, 1934. (Docket No. 42, Calendar No. 37,984.) Decided December 10, 1934.

Bill by Frances Richard against Detroit Trust Company, executor of the estate of Otis K. Richard, deceased, and others to have an antenuptial contract declared null and void and for other relief. Bill dismissed. Plaintiff appeals. Affirmed.

*Wallace C. Hall, Justin M. Hannick* and *Marshall R. Guidot,* for plaintiff.

*Goodenough, Voorhies, Long & Ryan,* for defendants.

BUSHNELL, J. Prior to her marriage on March 12, 1931, to Otis K. Richard, plaintiff executed an antenuptial agreement, which, without aid or advice of counsel for either party, was drawn by her intended spouse, who was killed in an automobile accident on August 24th the same year. Mrs. Richard appeals from an unsuccessful attempt to have the contract declared null and void, and alleges that through fraud and deceit she was induced to sign the instrument by representations that it was to be destroyed after having been used to satisfy Mr. Richard's relatives, and that she received no valid or subsisting consideration.

The agreement dictated by Mr. Richard and written by the plaintiff reads:

"AGREEMENT.

"Made this 18th day of February, 1931, by and between Frances Cramer and Otis K. Richard of Detroit, Mich. Whereas Frances Cramer and Otis K. Richard seriously considering marriage to one

another and both believing marriage should be based on but one thing—that one thing is love— therefore in the event of an actual marriage between the above-named parties and in consideration of his, O. K. Richard's, children by a former wife, I, Frances Cramer, hereby agree to waive all of my lawful rights or claims to any and/or all of his, O. K. Richard's, money, real estate, stocks, bonds, notes, securities, or personal property, and all or any part of the income or appreciation derived therefrom, nor will I, Frances Cramer, interfere with in any way or expect to participate in common until all or any part of the above-mentioned tangibles now or any time after our proposed marriage, that he, O. K. Richard has acquired or contracted for either whole or in part or came into possession of prior to the date of an actual marriage between the two parties, Frances Cramer and O. K. Richard. I, Frances Cramer, do however expect to share and participate in all income produced by him, O. K. Richard, from any source other than that mentioned in the foregoing paragraph.

                                    "FRANCES CRAMER
                                    "O. K. RICHARD
"Wednesday, Mar. 11, 1931.
"C. C. RICHARD."

Appellant has no disagreement with appellees' position that "marriage alone is sufficient consideration for an antenuptial agreement," but argues that because the agreement did not contain a promise to marry on the part of the intended spouse, he was not bound to do so and therefore plaintiff received no consideration for the promise.

Until the marriage, plaintiff had no rights to surrender in Richard's property. There was, until marriage, only an offer by plaintiff to give up certain rights if and at such time as the parties should marry. Marriage constituted an acceptance of the

offer, and having received the benefit of the acceptance, even though such benefit was decreased by her husband's premature death, plaintiff is bound by her promise. In both *Graves* v. *Von Below,* 160 Mich. 408, and *Hockenberry* v. *Donovan,* 170 Mich. 370, the engagement of the parties antedated the agreement. We think there is no merit in plaintiff's contention as to absence of consideration.

Plaintiff also contends that she should be released from her promise because it was obtained through fraud and trickery by one who, though standing in a confidential relationship, used undue influence, and his representatives did not sustain the burden of showing good faith, fair dealings and an open disclosure on the part of deceased. The principal cases on the subject in this jurisdiction in which similar questions were raised are: *In re Estate of Pulling,* 93 Mich. 274; *Koch* v. *Koch,* 126 Mich. 187; *Hockenberry* v. *Donovan, supra;* and *Detroit Trust Co.* v. *Baker,* 230 Mich. 551.

Mr. Justice LONG in the *Pulling* opinion quoted at length from *Kline* v. *Kline,* 57 Pa. 120 (98 Am. Dec. 206), as to the confidential relationship. The agreement executed before marriage, however, was not the sole evidence of the understanding between the parties, for on the very day of the marriage Dr. Pulling made a writing under his hand which throws some light upon the transaction and shows that the whole agreement and understanding between the parties was not confined to the papers signed by Mrs. Pulling. It also shows the motives which actuated the parties in making any agreement whatever, and the court concluded that it did not seem probable that it was ever understood that the widow was to be deprived of all participation in the estate and that the probate and circuit courts were right in their interpretation of the contract.

The *Koch Case* turned on the question of alleged fraud. The contract was drawn by a lawyer of ability and repute who fully explained the matter to the intended wife before she executed agreement, and told her she would obtain more property as his widow, in case of death, than she would by the contract. Mr. Justice GRANT wrote his own headnotes for the opinion and held that the defendant (the wife) failed to prove that the contract was obtained by fraud. We must consider the headnote written by the learned justice as a part of an opinion in which the entire court concurred. The case is authority for the proposition that where an antenuptial agreement is alleged to have been obtained by fraud, the burden of proof is on the party charging the fraud.

In *Hockenberry* v. *Donovan, supra,* the wife sought cancellation of the contract for alleged fraud. The circumstances are not unlike those in the case at bar except that there were two agreements, both drawn by experienced and reputable counsel, and explained to the parties. Mr. Justice BROOKE, speaking for the court, held (380):

"Where the parties entering into an antenuptial contract are of mature years and have full understanding of the meaning of the instrument, the agreement, if based on a sufficient consideration, and in the absence of fraud, is valid and enforceable, and is not against public policy."

There is no intimation in the opinion as to a shifting of the burden of proof. The fact that the decree below dismissing the widow's bill was affirmed seems to indicate the burden of proof was on the widow.

The *Baker Case* is the only one of the cases cited in which the *Pulling* opinion is mentioned, and then not in connection with the question of any confiden-

tial relationship, although that was fully considered as appears from the following language used by Mr. Justice Wiest, at page 556:

"We find no *indicia* of fraud, by way of misrepresentation or concealment or inadequacy in the amount agreed upon in lieu of dower. But it is said the sum given warrants the assumption that the confidential relation arising out of the promise to marry was abused. Conceding betrothal begets a confidential relation, it does not follow, *ipso facto,* that it engenders fraudulent desires in the swain, even though he be less bucolic than the widow about to be engrafted or that fraud is presumed to have been practiced to induce a widow of 31 to marry a man of 71, and agree to accept in lieu of prospective dower a substantial sum. In the absence of any testimony showing false representations, deceit or the withholding of information, we cannot predicate a finding of fraud or an abuse of the confidential relation, merely upon the sum here agreed. Neither does such sum, under the disclosed circumstances, require plaintiffs to rebut a presumption of fraud. Until some existence of fraud more substantial than a possible wrong guess is presented there is nothing for plaintiffs to rebut."

A consideration of these authorities shows that the law of this State recognizes the existence of a confidential relationship requiring good faith, fair dealings, and open disclosure, but places upon the party charging fraud and a breach of confidence the burden of proof. What then of the proofs in the case at bar? The credibility of witnesses is usually left to the determination of the trial court and wisely so. *Mayer* v. *Railway Co.,* 152 Mich. 276; *Porter* v. *East Jordan Realty Co.,* 210 Mich. 398 (11 A. L. R. 963). The trial court said:

"The lips of Otis K. Richard are sealed by death, and the plaintiff cannot testify because of the stat-

ute forbidding her to testify as to matters equally within the knowledge of the deceased. This leaves as the only possible witnesses upon this question, Mr. and Mrs. Jones, the sister and brother-in-law of plaintiff. Their testimony, while directly in point upon this question, does not satisfy me. I am not able to hold that the plaintiff has sustained the burden of proof placed upon her. I believe rather, from all the testimony in this case, that the plaintiff did sign the agreement voluntarily and willingly.''

In equity appeals we are not so strictly bound by the findings of fact as in appeals from actions at law. *State* v. *Venice of America Land Co.,* 160 Mich. 680. Such appeals are trials *de novo.* We have carefully considered the testimony and have weighed the arguments of counsel.

The proof of the fraud must be found, if at all, in the testimony of Mattie Jones, a sister of plaintiff, and her husband, who were present at the invitation of Richard when the agreement was drawn and executed, and that in the light of the surrounding circumstances, to say the least, neither they nor defendants' witness, C. C. Richard, a brother of the deceased, could be called disinterested, and the record shows a relationship of an intimate character between Mrs. Richard and Mrs. Jones as well as between the deceased and his brother. The testimony of employees of Richard as to statements claimed to have been made by plaintiff four years prior to the date of agreement in a casual conversation, has no probative value as to the issues here and was so treated by the trial judge in his opinion. Jones testified that Richard said:

''The only purpose of the agreement was to show it to his brother after which time it would be destroyed.''

It was dated February 18th and witnessed by the brother on March 11th and found in a safety deposit box of Richard after his death in August. When asked what Mrs. Richard said before she signed the agreement, he testified:

"Well, she said that she did not want to sign it, because of the embarrassment which would probably come to her if anyone else would happen to see it, her sisters or Mr. Richard's relatives."

Further testimony is much to the same effect. Fraud is not lightly presumed; it must be shown by a preponderance of the evidence.

We are not constrained to disagree with the conclusions of the trial judge, which are amply supported by the record. The decree is affirmed, with costs to appellees.

NELSON SHARPE, C. J., and POTTER, NORTH, FEAD, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred.