KRUSHEW v. MEITZ.

1. APPEAL AND ERROR—JUDGMENT NON OBSTANTE VEREDICTO—EVIDENCE.

On appeal from judgment for defendants *non obstante veredicto* for plaintiff, facts of case must be considered in the light most favorable to plaintiff.

2. FRAUD—ACTIONABLE FRAUD—ESSENTIALS.

To establish actionable fraud it is necessary to show defendant made a material representation knowing it to be false or made it recklessly without any knowledge of its truth and as a positive assertion, made it with intention plaintiff should act upon it and that plaintiff acted in reliance upon it to his injury.

3. SAME—MISREPRESENTATIONS AS TO MATTERS OF LAW—NOTICE OF FORFEITURE OF A LAND CONTRACT.

Generally fraud cannot be predicated upon misrepresentations as to matters of law and, although such rule may be rendered inapplicable by peculiar facts and circumstances of a case, vendor's misrepresentation as to legal effect of notice of forfeiture of land contract is *held,* not such a misrepresentation as to render rule inapplicable under record presented.

4. Same—Conspiracy—Eviction—Evidence.

In action by purchaser of farm on land contract against his assignees and the vendors for fraud and conspiracy in alleged eviction, evidence that plaintiff, in default as to payments, left after vendors gave him notice of forfeiture and threatened removal by sheriff but returned to possession for a time after negotiating sale of his interest to his assignees for a valuable consideration *held*, insufficient to sustain either charge and to justify entry of judgment for defendants notwithstanding verdict for plaintiff.

Appeal from Wayne; Brennan (Vincent M.), J. Submitted April 14, 1936. (Docket No. 86, Calendar No. 38,697.) Decided September 2, 1936. Rehearing denied October 16, 1936.

Case by John Krushew against William Meitz and others for damages for fraud and conspiracy in eviction from land. Verdict for plaintiff. Judgment for defendants *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Harry J. Lippman*, for plaintiff.

*George Heideman* (*William F. Sawn*, of counsel), for defendants Meitz.

*Lungerhausen, Weeks, Lungerhausen & Neale*, for defendants Burkel.

Bushnell, J. The declaration of plaintiff claims damages for fraud and conspiracy in his alleged eviction from an 80-acre farm and separate wood lot of 11¼ acres in Macomb county, which he was purchasing on land contract from defendant Meitz and wife, and for fraud and conspiracy in the subsequent assignment of his rights as vendee therein to defendant August J. Burkel.

At the close of plaintiff's testimony, motions were made by all defendants for a directed verdict for the reason that no actionable fraud was shown nor was there any proof of conspiracy. Burkel's attor-

ney asked to have all testimony stricken relating to transactions prior to the service by Meitz of a notice of forfeiture. The motion to strike was denied and judgment was reserved, on the motion to direct, under the Empson act. See 3 Comp. Laws 1929, § 14531.

The jury found for plaintiff in the sum of $3,699.48 against all the defendants who then renewed their motion. The court filed a comprehensive opinion and entered a judgment for defendants, notwithstanding the verdict.

The alleged errors, grounds of appeal and statement of questions involved have been summarized and discussed by appellant under the one general question, *viz:* Did the trial court err in vacating the verdict of the jury and entering a judgment of no cause for action *non obstante veredicto?* The facts hereafter stated must, therefore, be considered in the light most favorable to plaintiff.

In 1924, Krushew purchased the premises from one Burke and wife for an agreed consideration of $20,000, giving in exchange therefor certain other real estate, paying Burke $1,000 in cash, assuming his indebtedness of $1,500 to one Boeling and $8,700 yet unpaid on Burke's contract with Meitz from whom Burke was buying the property on land contract. A new land contract was then executed between Meitz and wife as vendors and Krushew as vendee, reciting $8,700 as the purchase price and providing for payments of $100 per year or more on principal, with interest at 6 per cent. on unpaid balances. Krushew subsequently assigned his vendee's interest in this contract as collateral security to the Boeling obligation.

By mutual agreement, the parties later increased the principal payment obligation to $100 or more, payable semi-annually. Plaintiff made irregular

payments on the contract until the spring of 1931, at which time he was in default. The vendors, becoming uneasy because of an auction sale held by the vendee at which he sold almost all of his farm equipment and livestock, consulted their attorney, Christian F. Matthews. A so-called "forfeiture of land contract notice" was sent by him to Krushew on April 6, 1931, declaring the contract forfeited and notifying him to surrender possession. The notice described the property and said "Amount due $250," same to be paid on or before April 16, 1931. After receiving the notice, Krushew called on the vendors, accompanied by his son William. He asked what the paper meant and was told that the contract was cancelled and if he did not move within 48 hours, the sheriff would put him off the place. Believing that his rights had terminated, Krushew moved to Detroit the next day.

About a week later, defendant Burkel, a retired farmer living in Detroit, and who had attended the auction sale, came to see Krushew and said that he had been to see the Meitzes who told him that plaintiff was through with the farm and if he would sign the contract over he could move back and live there free of charge until March 1, 1932. An appointment was made to meet in Mr. Matthews' office the next day, April 13th. The proposed arrangements between Krushew and Burkel were discussed with Mr. Matthews, Mr. Hugh H. Neale, representing Burkel. The two attorneys and plaintiff then conferred with Mr. Nunnelly, attorney for the Utica bank, regarding the contract indebtedness; notes were made of an indebtedness to Mrs. Boeling of $1,580.64 and $1,337.18 to the Meitzes including past due principal, interest, taxes and insurance; the value of the farm, the existing situation and the effect of the proposal were discussed. Mr. Neale testified that:

"Mr. Krushew said that he had lost everything he had, and that he was glad to see Mr. Burkel get this property rather than let it go back to the Meitz people."

Burkel insisted upon an examination of the title and it was agreed that the parties would meet again in Mr. Matthews' office on April 17th.

When the transaction was closed on the 17th there were present, according to Mr. Neale, "Mrs. Boeling and some gentleman with her, some relative; Mrs. Meitz; her son-in-law, I believe; and there was Mr. Krushew and his son; Mr. Burkel; his son and myself and Mr. Matthews." The papers were drawn, discussed and explained. Neale said to Krushew, "You understand you are assigning this contract, all your interest in the contract and in the property to Mr. Burkel and you are going to live out there until March 1st," and he said, "Yes." The assignment was then executed and acknowledged before Mr. Neale as notary. Burkel assumed and agreed to pay Krushew's indebtedness to both Boeling and Meitz.

Plaintiff moved back to the farm and remained there until November when he claims Burkel's son ordered him off the premises. According to Reynald Burkel, however, Krushew moved from the premises for the reason that he was told that the two Krushew boys could not stay there any more and eat at the expense of the Burkels. A few days later, Burkel came home from market and found that Krushew had left.

It is impossible to find any evidence of conspiracy in the testimony. The claim of fraud is predicated largely upon the "notice of forfeiture" and the threat of removal by the sheriff if possession was not given in 48 hours. Burkel had nothing to do with the giving of the notice and the conversation which

followed. He could have waited silently and dealt with the vendors on his own terms after they had completed their proceedings for possession. On the contrary, he paid Krushew's obligation to Boeling, and, although dealing at arm's length, there is no showing of any overreaching, unfair dealings, or other indicia which are usually associated with typical fraudulent transactions.

It cannot be claimed that the notice of forfeiture, as introduced in evidence, was sufficient of itself to terminate Krushew's contract rights even though the parties seemed to give it that interpretation.

Threats of removal by the sheriff unless possession is relinquished are not fraudulent. The testimony must be tested by the legal elements of fraud as stated in known standards. These are:

"(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Candler* v. *Heigho,* 208 Mich. 115.

As a general rule fraud cannot be predicated upon misrepresentations as to matters of law, but this rule may be rendered inapplicable by the peculiar facts and circumstances of the case. *Rosenberg* v. *Cyrowski,* 227 Mich. 508.

The reasons given for the foregoing rule are that everyone is presumed to know the law, both civil and criminal, and is bound to take notice of it, and hence, has no right to rely on such representations or opinions and will not be permitted to say that he was misled by them. 12 R. C. L. p. 295, and authorities therein cited. The representation by Mrs. Meitz of

the legal effect of the notice of forfeiture was a representation of law, and the facts disclosed by this record do not render the rule inapplicable.

A close examination of the testimony in a light most favorable to the plaintiff brings us to the same conclusions reached by the trial judge, whose observations we quote and adopt as follows:

"The three parties to the transaction were about equally simple and ingenuous. None of the defendants bore a fiduciary relationship to the plaintiff. They dealt at arm's length with him and each other. There was no concealment or misrepresentations of facts on the part of any one. The terms of the deal had been discussed at at least two previous conferences extending over a period of about a week, and were thoroughly understood by everyone. Assuming that the papers were not read to plaintiff, he cannot complain because they set forth the transaction exactly as he had agreed upon. He had, in effect, abandoned possession of the farm and his claim to it following the claimed threat of eviction, and following the apparent loss by chattel mortgage foreclosure of all of his stock, tools and equipment. His interest in his rights, or supposed rights, was resurrected by Burkel, and plaintiff after plenty of time to deliberate and to confer with his sons, voluntarily, and with full knowledge of the facts, agreed to relinquish his interest, or supposed interest, in the premises in return for the payment of the Boeling note and free subsistence on the farm for a period of about one year. That he fully understood and was satisfied with the transaction is confirmed by the fact that he returned to the farm and lived there for several months until he left following an argument with Burkel's son. It is insinuated that there was something reprehensible in the Burkels and the Meitzes being represented by legal counsel, while plaintiff was not. It was the plaintiff's right to be

represented by counsel, or not, as he saw fit. His son, who could read and write, was present. There is not a scintilla of proof that either lawyer present, both men of high standing at the bar, sought to impose in any manner upon the plaintiff, or to deceive him as to his rights. * * *

"It is not infrequent that ignorant people deal with one another, equally mistaken as to their legal rights, but if each assumes to act upon his own ignorance he cannot later complain when some lawyer advises him that he might have done otherwise. * * *

"If we should assume, however, that plaintiff had some grounds for complaint because of the manner in which his leaving the farm in the first instance was brought about, it would seem that he waived whatever complaint he had in that regard by voluntarily entering into the transaction with the Burkels, by which he assigned his supposed interest in the contract and the premises covered by the same for a valuable consideration. * * * Upon the record here presented, it would patently be a rank miscarriage of justice to permit to stand a verdict, obviously inspired by sympathy for the plaintiff, convicting the defendants Burkel and Meitz of having made material false representations, and of having made them knowing that they were false, or of having made them recklessly, without any knowledge of their truth, and as positive assertion."

The trial court did not err, there was no actionable fraud, and the judgment is affirmed, with costs.

NORTH, C. J., and FEAD, WIEST, BUTZEL, EDWARD M. SHARPE, and TOY, JJ., concurred. POTTER, J., took no part in this decision.