## MESH *v.* CITRIN.

1. FRAUD—BURDEN OF PROOF—PRESUMPTIONS—INFERENCES.

    The burden of showing fraud is upon the person alleging it, and fraud is never presumed nor lightly inferred.

2. SAME—REPRESENTATIONS CONCERNING PAST VOLUME OF BUSINESS.

    False representations concerning the past volume of business, which constituted an inducement to the purchase of the business, are actionable.

3. SAME—REPRESENTATIONS CONCERNING VOLUME OF BUSINESS.

    In action for fraud in the subleasing of a gasoline station wherein plaintiff claimed rescission and damages, record *held*, to show that alleged representations as to gasoline sales, claimed by defendant to have been prospective in nature, were connected with representations as to volume of gasoline sales.

4. SAME—RECITATION IN CONTRACT AS TO NONRELIANCE UPON REPRESENTATIONS.

    Recitation in contract of sublease of gasoline station that no representation as to condition or repair of station had been made by sublessor is not binding on sublessee induced to sign sublease by sublessor's fraudulent representations.

5. NEW TRIAL—NEW QUESTIONS MAY NOT BE RAISED ON MOTION FOR NEW TRIAL.

    Motion for new trial on ground that plaintiff was guilty of laches in remaining in possession of gasoline station for several months after discovering falsity of alleged representations as to the condition of the station and equipment cannot be made the vehicle for raising questions not raised on the trial in action for fraud by sublessee against sublessor.

6. FRAUD—GASOLINE STATION SUBLEASE—RESCISSION—LACHES.

    Sublessee of gasoline station who rescinded sublease and tendered return of property and equipment subject to the sublease five months after entering into possession thereof because of alleged fraud inducing execution of sublease *held*, to have acted with reasonable promptness under the circumstances, where record discloses he had complained of the condition of

---

Liability for fraudulent misrepresentations, see 3 Restatement, Torts, § 525 *et seq.*; Restatement, Restitution, § 8.

Accounting by person seeking restitution, see Restatement, Restitution, § 159.

Assumption of risk of mistake, see Restatement, Restitution, § 11.

the station and equipment on several occasions and at least once had demanded his money back but was urged by sub-lessor to continue the arrangement.

7. SAME—RESCISSION—LACHES.

A defrauded person is not required to rescind a transaction before he is reasonably sure he has been defrauded, if he acts with reasonable promptness after discovery of the fraud.

8. SAME—RESCISSION—REASONABLE TIME—QUESTION FOR JURY.

What is a reasonable time for rescission by one acquiring an interest in property because of fraud depends upon the facts and circumstances of the particular case and is usually a question for the jury.

9. SAME—ACTIONABLE FRAUD—ESSENTIALS.

To establish actionable fraud it is necessary to show defendant made a material representation knowing it to be false or made it recklessly without any knowledge of its truth and as a positive assertion, made it with intention plaintiff should act upon it and that plaintiff acted upon it to his injury.

10. SAME—MISREPRESENTATIONS—QUESTIONS FOR JURY.

In action for damages for fraud inducing execution of lease of gasoline station and equipment, questions of whether or not defendant's agent perpetrated a fraud upon plaintiff by mis-representing past volume of business and condition of station and equipment *held*, rightfully submitted to jury under proper instructions.

11. SAME—RESCISSION—TENDER—DEMAND.

Party suing to rescind sublease of gasoline station because of fraud must seasonably assert such rescission, tender back what he has received and demand repayment of purchase price.

12. SAME—SUBLEASE OF GASOLINE STATION—RESCISSION—IN STATU QUO.

Sublessee of gasoline station and equipment suing to rescind sublease because of fraud must place defendants *in statu quo* insofar as it is possible to do so.

13. SAME—RESCISSION—SUBLEASE OF GASOLINE STATION—RENT—DAMAGES.

In action for fraud in execution of sublease of gasoline station, based on rescission of sublease and tender of return of station and equipment, where plaintiff had paid $1,000 rent for prem-ises and record fails to show fair rental value of the station for the period it was occupied by plaintiff, such rent was not properly recoverable as damages.

14. SAME—VERDICTS—GREAT WEIGHT OF EVIDENCE.

In action for fraud incident to execution of sublease of gasoline station and equipment, verdict for plaintiff *held*, not against the great weight of the evidence.

15. COSTS—REMITTITUR.

No costs are allowed on appeal in action for fraud, where remittitur is allowed in a substantial amount, if it is filed.

Appeal from Wayne; Brennan (John V.), J., presiding. Submitted October 7, 1941. (Docket No. 6, Calendar No. 41,634.) Decided December 2, 1941.

Action by Paul Mesh against Jacob Citrin and others to rescind a contract for sublease of a gasoline station because of fraud. Verdict and judgment for plaintiff. Defendants appeal. Affirmed in part and reversed in part.

*Levin, Levin & Dill* (*Earlmont H. Dill* and *Morris Garvett*, of counsel), for plaintiff.

*Shapero & Shapero,* for defendants.

STARR, J. Defendants appeal from judgment of $2,077.94 entered on jury verdict for plaintiff.

Defendants were engaged in the wholesale gasoline business and in leasing and subleasing gasoline stations to which they sold gasoline and other merchandise. Defendants had leased the gasoline station at 2400 Brush street, Detroit, on September 30, 1938, and operated such station until the sale and sublease to plaintiff was concluded on December 30, 1938, as herein explained.

In the early part of December, 1938, plaintiff, a young man without experience in the gasoline station business, began negotiations with defendants for the subleasing of such station and equipment at 2400 Brush street and purchase of the good will and

certain personal property connected with the station. Plaintiff's negotiations were conducted with Max Biber, an attorney employed in defendants' office, who handled their purchase, leasing, and sale of gasoline stations and who was described as their "office attorney." Defendants do not question Biber's authority to represent them in the transactions here involved. Such negotiations resulted in a deal being concluded on December 30, 1938, whereby defendants executed bill of sale of the "good will, tools, equipment (except gasoline pumps, underground tanks, oil hiboys, air compressor, safe) and all merchandise" to plaintiff at a price of $1,500, to be paid $800 down and the balance of $700 by defendants' adding ½ cent per gallon to the price of gasoline sold plaintiff. Plaintiff executed chattel mortgage back to defendants, securing payment of such balance of $700. On the same date defendants executed sublease of the station, tanks, pumps, and other equipment to plaintiff for a period of 57 months at a monthly rental of $200. Plaintiff expressly agreed to purchase his full requirements of gasoline, oil, and other merchandise from defendants. Mr. Biber testified regarding the sale price as follows:

"I think $1,500 was charged for the good will of this station.   *   *   *
"$1,500 was our good will price as we called it."

The sublease of the station and equipment contained the following provision:

"Said party of the second part [plaintiff] acknowledges that it has examined and knows the condition of said premises and the buildings, equipment, machinery and appliances situated thereon, and acknowledges that it has received the same in good order and repair, that no representation as to

the condition or repair thereof have been made by the party of the first part."

Prior to signing the sublease and other documents plaintiff had the same examined by an attorney who raised certain objections to the terms, and a supplemental rider or agreement was executed by the parties on the same date, December 30, 1938, providing in part as follows:

"Anything in said paragraph to the contrary notwithstanding, the first party [defendant] agrees to replace without cost to the second party all worn out equipment and all worn out parts of any of the said equipment. 'Equipment' shall include all machines, pumps and appliances. Second party shall have the option to return any of the equipment at the station to the first party and to replace the same with equipment of his own, but upon termination of this lease all such replacements shall be and remain the property of the second party."

Plaintiff went into possession of the station on January 2, 1939, and retained possession until May 27, 1939, when he rescinded the entire transaction on the ground of fraud and misrepresentations by defendants. On that date plaintiff sent defendants the keys to the station, bill of sale of personal property purchased, quitclaim deed assigning all his interest under sublease, and also written notice of rescission tendering possession of the station, demanding repayment of purchase price paid, and damages. Defendants admitted such tender but refused to accept rescission and returned the bill of sale and other papers to plaintiff or his attorney.

On July 13, 1939, plaintiff began this law action claiming rescission and damages on the ground that defendants falsely and fraudulently represented to him (1) that the station had sold 29,000 gallons

of gasoline a month; (2) that plaintiff would make a profit of $50 a week operating the station; and (3) that the station and equipment were in excellent condition. Defendants filed answer denying all allegations of false and fraudulent representations except the allegation as to the station and equipment being in excellent condition.

The case was tried before a jury, and at the conclusion of plaintiff's proofs, defendants moved for directed verdict, which was taken under advisement. Such motion, being renewed at the conclusion of all proofs, was again taken under advisement, and the case was submitted to the jury which returned verdict of $2,077.94 for plaintiff. Such verdict represented $800 paid down on the purchase price of the station, $277.94 paid on the purchase price by defendants' adding ½ cent per gallon to the price of gasoline sold plaintiff, and $1,000 rental paid by plaintiff for the five-month period he retained possession of the station.

Defendants' motion for judgment *non obstante veredicto* and, in the alternative, for new trial was denied, the court filing written opinion stating, "the evidence amply supports the finding of the jury." Judgment was entered on the verdict for plaintiff, and defendants appeal contending, in substance, (1) that plaintiff has established no basis for rescission; (2) that plaintiff waived his right to rescission by laches; (3) that the court erred in submitting to the jury the question of plaintiff's right to recover rent paid as a part of his damages; (4) that the court erred in its charge to the jury and in refusing to give requested charges; (5) that the court erred in not granting motion for directed verdict, motion for judgment *non obstante veredicto,* and motion for new trial; (6) that the verdict was against the great weight of the evidence.

The record is largely a recital of statements and denials, and practically every factual issue seems to be in dispute.

Plaintiff alleges that he was induced to purchase the good will and certain personal property and lease the station by reason of defendants' false and fraudulent representations, and the burden is upon plaintiff to establish such fraud. In *Goldberg* v. *Goldberg,* 295 Mich. 380, 384, we said:

"The burden of showing fraud is upon the person alleging it. *John Heidsik Co.* v. *Rechter,* 291 Mich. 708. Fraud is never presumed, *Rossman* v. *Hutchinson,* 289 Mich. 577, nor is it to be lightly inferred. *Richard* v. *Detroit Trust Co.,* 269 Mich. 411."

See, also, *Waldbauer* v. *Hoosier Casualty Co.,* 285 Mich. 405; *Achenbach* v. *Mears,* 272 Mich. 74; *Richard* v. *Detroit Trust Co., supra; Robert* v. *Morrin's Estate,* 27 Mich. 306.

Plaintiff testified defendants' representative, Biber, stated that the station sold 29,000 gallons of gasoline a month. "He just told me that station pumped 29,000 gallons a month." Plaintiff also testified that in his presence Biber figured out on paper how much profit would be made on sales of 29,000 gallons a month. Plaintiff's mother-in-law testified that Biber told her the station "sold 29,000 gallons a month . and that Mr. Mesh [plaintiff] would make $50 or $60 a week." Biber denies making such statements to either plaintiff or his mother-in-law. The record indicates that such representation of sales of 29,000 gallons of gasoline per month, if made by Biber, was undoubtedly false. Defendants' answer admits the average sales from the station for October, November, and December, 1938, were only 16,188 gallons a month, and defendants' testimony indicates average monthly sales of

less than 10,000 gallons for the year 1938. Plaintiff's sales were: January, 16,386 gallons; February, 12,393 gallons; March, 10,772 gallons; April, 10,837 gallons. Plaintiff testified he did not operate the station in May, 1938.

We have often held that false representations concerning the past volume of business are actionable. *Poloms* v. *Peterson*, 249. Mich, 306; *May* v. *Otto*, 236 Mich. 540; *Schnepper* v. *Halleb*, 227 Mich. 455; *Johnson* v. *Campbell*, 199 Mich. 186; *Martin* v. *Veana Food Co.*, 153 Mich. 282; *Smith* v. *Werkheiser*, 152 Mich. 177 (15 L. R. A. [N. S.] 1092, 125 Am. St. Rep. 406).

Plaintiff and his mother-in-law both testified Biber stated that plaintiff would make $50 a week operating the station. Biber denies making such statement. Defendants contend that such alleged representation, if made, was prospective in nature— not an assertion of an existing fact—and, therefore, establishes no basis for rescission or claim for damages. Biber's statement, standing alone, would undoubtedly be a matter of opinion only. However, from the record it appears that such statement formed a part of, and was connected with, the alleged representation as to the volume of gasoline sales.

Plaintiff testified, in substance, that Biber represented the station and equipment were "in perfect condition." Plaintiff further testified that the station and equipment were not in perfect condition; that the gasoline tanks were cracked; that water leaked into the tanks causing customers' cars to freeze; that water from the tanks froze in the pumps and motors; that wiring was defective; that motors burned out; and that defendants refused to make necessary repairs. Defendants deny such representation and claim the station was in good condi-

tion; that they made all requested repairs, and that plaintiff failed to keep the station clean.

Defendants contend that as a matter of law plaintiff was estopped from claiming any misrepresentation of the condition of the station and equipment because of the above-quoted provisions of the lease and supplemental agreement. Such provisions are not binding on plaintiff if he was induced to sign the lease by defendants' fraudulent representations. *Delta Asbestos Co., Inc.,* v. *Sanders,* 259 Mich. 317; *Fignar* v. *Schreiber,* 255 Mich. 661; *Bacon* v. *Fox,* 267 Mich. 589; *Hanson* v. *Fletcher Auto Sales Co.,* 239 Mich. 118.

In *Hubert* v. *Joslin,* 285 Mich. 337, 344, Mr. Justice POTTER, discussing a so-called "self-reliance" clause in a contract, said:

"There is ordinarily no reason to insert such a clause in a contract unless the party who insists upon it is prompted to do so by a consciousness he has successfully perpetrated a fraud upon the opposite party. Such a clause is ineffective as a defense against fraud. *Peck* v. *Jenison,* 99 Mich. 326; *J. B. Millet Co.* v. *Andrews,* 175 Mich. 350; *J. B. Colt Co.* v. *Reade,* 221 Mich. 92; *Plate* v. *Detroit Fidelity & Surety Co.,* 229 Mich. 482; *Fignar* v. *Schreiber,* 255 Mich. 661; *Gloeser* v. *Moore,* 284 Mich. 106."

Defendants contend that plaintiff, by remaining in possession of the station for several months after he discovered the alleged falsity of the representations as to the condition of the station and equipment, was guilty of laches in asserting his right to rescind and had thereby waived his right to claim rescission and damages. This defense of laches and waiver was first raised in defendants' motion for judgment *non obstante veredicto* or, in the alternative, for new trial. We have repeatedly held that motion for new trial cannot be made the vehicle

for raising questions not raised on the trial. *Lindow* v. *Mudge,* 247 Mich. 624; *Tishhouse* v. *Schoenberg,* 234 Mich. 271.

However, plaintiff's testimony shows that on several occasions he complained of the condition of the station and equipment; that at least on one occasion he demanded his money back; and that defendants urged him to "hold on, to keep on trying." We believe that under the circumstances disclosed by the record plaintiff acted with reasonable promptness in rescinding the transaction. In *Barron* v. *Myers,* 146 Mich. 510, 514, Mr. Justice Hooker said:

"The law does not require action to rescind before the defrauded person is reasonably certain that he has been defrauded. If he acts with reasonable promptness thereafter, it is sufficient. The law of laches should be used as a shield and not a sword."

See, also, *Upell* v. *Bergman,* 246 Mich. 82; *Bayley* v. *Friedberg,* 226 Mich. 125; *Plate* v. *Detroit Fidelity & Surety Co.,* 229 Mich. 482; *Witte* v. *Hobolth,* 224 Mich. 286; *Cornell* v. *Crane,* 113 Mich. 460.

In *Gloeser* v. *Moore,* 284 Mich. 106, 119, Mr. Justice Potter said:

"What is a reasonable time for rescission by the buyer depends upon the facts and circumstances of the particular case, * * * and is usually a question for the jury. *Geo. D. Sisson Lumber & Shingle Co.* v. *Haak,* 139 Mich. 383; *Jones* v. *Bloomgarden,* 143 Mich. 326."

The real question in this case is: Was plaintiff induced to purchase the business and good will of the station and lease the station by reason of defendants' false and fraudulent representations and, if so, what are plaintiff's properly recoverable damages?

In *Krushew* v. *Meitz,* 276 Mich. 553, 558, Mr. Justice BUSHNELL said:

"The testimony must be tested by the legal elements of fraud as stated in known standards. These are:

" '(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.' *Candler* v. *Heigho,* 208 Mich. 115."

It would serve no purpose to relate further the many statements, denials, and explanations appearing in the testimony in this case. From a careful examination of the entire record we are satisfied that the questions of fraud and misrepresentation were rightfully submitted to the jury under proper instructions.

However, we believe the trial court erred in failing to instruct the jury that the rental of $1,000 paid by plaintiff was not recoverable as a part of his damages. The case was tried and submitted on the theory of rescission, and under such theory plaintiff must tender back what he has received from defendants. As stated by Mr. Justice McALLISTER in *Gloeser* v. *Moore,* 283 Mich. 425, 431:

"In rescission he is entitled to the recovery of what he has paid. However, in rescission there are certain prerequisites to the bringing of such an action. Upon the discovery of the fraud he must seasonably assert such rescission, tender back what he has received, and demand repayment of the purchase price. *Glover* v. *Radford,* 120 Mich. 542; *Stowe* v. *Mather,* 234 Mich. 385; 3 Black on Rescis-

sion & Cancellation (2d Ed.), § 577; *Witte* v. *Hobolth*, 224 Mich. 286; *O'Neill* v. *Kunkle*, 244 Mich. 653; *Dorgan* v. *Birney*, 272 Mich. 145.''

Plaintiff, on rescission of the transaction, must place defendants in a *status quo* position insofar as it is possible to do so. *McIntosh* v. *Fixel*, 297 Mich. 331; *Gloeser* v. *Moore*, 283 Mich. 425; *Achenbach* v. *Mears, supra; Wolfram* v. *Shifflet, Cumber & Co.*, 244 Mich. 518; *Niederhauser* v. *Detroit Citizens' Street-Railway Co.*, 131 Mich. 550; *Wright* v. *Dickinson*, 67 Mich. 580 (11 Am. St. Rep. 602).

Plaintiff remained in possession of the station and equipment for five months and paid the agreed rental of $1,000. He received the possession and use of the station and equipment in consideration of his rental payments. He cannot return the consideration he received. The fact that he lost money in his operations does not establish that the station and equipment had no rental value. Plaintiff has adduced no testimony showing the fair rental value of the station for the five-month period. In the absence of such testimony there is no basis for determining his damage. There being no proof that plaintiff received less in rental value than he paid, we are obliged to conclude that the rent paid was not properly recoverable as damages. The court should have so instructed the jury.

There was sufficient evidence from which the jury could reasonably determine that plaintiff had been defrauded and on which it could determine his damages as regards money paid to defendants on the purchase price of the good will and personal property. The verdict was not against the great weight of the evidence.

We will not, in the situation presented by the disputed and conflicting testimony in this case, substi-

tute our judgment for that of the jury, who saw and heard the witnesses and could judge the truthfulness of their statements.

If plaintiff, by remittitur filed within 15 days, reduces the judgment to $1,077.94, it will stand affirmed at that amount with interest; otherwise, the judgment is reversed and a new trial granted. If remittitur is filed, no costs will be allowed; otherwise, defendants shall have costs.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, WIEST, and BUTZEL, JJ., concurred.